# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION
## No. 5:24-cv-500

|  |  |
|---|---|
| UNITED SOVEREIGN AMERICANS, INC.; and RICHARD YOST,<br><br>     Petitioners,<br><br>v.<br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS; JOSHUA STEIN, in his official capacity as Attorney General of North Carolina; and MERRICK GARLAND, in his official capacity as Attorney General of the United States,<br><br>     Respondents. | **MEMORANDUM OF LAW IN SUPPORT OF STATE RESPONDENTS' MOTION TO DISMISS** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................... iii

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS .................................................................................................. 1

    A.   The Parties ........................................................................................................... 1

    B.   Petitioners' Allegations ....................................................................................... 3

ARGUMENT ....................................................................................................................... 3

  I.   Legal Standard ......................................................................................................... 3

  II.  This Court Lacks Jurisdiction Over the Petition.................................................... 4

    A.   Sovereign immunity bars the petition against State Respondents. ..................... 4

    B.   Petitioners lack standing. .................................................................................... 6

  III.  Petitioners' Claim Is Barred By Laches. ...................................................... 14

  IV.  Petitioners Fail to State a Claim for Which Relief Can Be Granted. ............ 15

    A.   Petitioners have no clear right to mandamus relief................................... 16

    B.   The State Respondents have no "clear duty" to provide Petitioners' chosen remedies. ................................................................................................... 17

    C.   Petitioners have an alternative route to relief. .......................................... 18

CONCLUSION.................................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Cooper*,
    895 F.3d 337 (4th Cir. 2018) ............................................................................. 4

*Ariz. All. for Retired Ams. v. Mayes*,
    No. 22-16490, 2024 U.S. App. LEXIS 23963 (9th Cir. Sept. 20, 2024) ..........................11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................ 4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................ 4

*Bragg v. W. Va. Coal Ass'n*,
    248 F.3d 275 (4th Cir. 2001) ............................................................................. 5

*Brown v. McMaster*,
    No. 9:10-cv-307, 2010 U.S. Dist. LEXIS 57578 (D.S.C. June 8, 2010) ......................... 16

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) .....................................................................................7, 8, 11

*Clements v. Fashing*,
    457 U.S. 957 (1982) .......................................................................................... 15

*Cooper v. N.C. State Bd. of Elections*,
    No. 5:08-cv-423, 2009 U.S. Dist. LEXIS 132662 (E.D.N.C. June 12, 2009) ................... 5

*Cumberland Cnty. Hosp. Sys., Inc. v. Burwell*,
    816 F.3d 48 (4th Cir. 2016) ............................................................................... 16

*Davis v. Lansing*,
    851 F.2d 72 (2d Cir. 1988) ................................................................................ 16

*Donald J. Trump for President, Inc. v. Boockvar*,
    493 F. Supp. 3d 331 (W.D. Pa. 2020) .............................................................8, 11

*E.E.O.C. v. Propak Logistics, Inc.*,
    746 F.3d 145 (4th Cir. 2014) ............................................................................. 14

*First Fed. Sav. & Loan Ass'n v. Baker*,
    860 F.2d 135 (4th Cir. 1988) ....................................................... 16, 17, 18, 19

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) .......................................................................................... 10

*Giarratano v. Johnson*,
   521 F.3d 298 (4th Cir. 2008) ............................................................................ 4

*Gurley v. Superior Ct. of Mecklenburg Cty.*,
   411 F.2d 586 (4th Cir. 1969) ..................................................................... 16, 17

*Hafer v. Melo*,
   502 U.S. 21 (1991) ................................................................................... 4, 5

*In re Baldwin-United Corp.*,
   770 F.2d 328 (2d Cir. 1985) ............................................................................ 6

*In re Brown*,
   692 F. App'x 89 (3d Cir. 2017) ...................................................................... 16

*In re Cooper*,
   349 F. App'x 815 (4th Cir. 2009) .................................................................. 16

*Jackson v. Leake*,
   No. 5:06-cv-324, 2007 U.S. Dist. LEXIS 112829 (E.D.N.C. Mar. 30, 2007) ................. 12

*Johnston v. Allen*,
   No. 1:09-cv-46, 2009 U.S. Dist. LEXIS 129572 (M.D.N.C. Jan. 22, 2009) ................... 16

*Kentucky v. Graham*,
   473 U.S. 159 (1985) .................................................................................... 5

*Lake v. Hobbs*,
   623 F. Supp. 3d 1015 (D. Ariz. 2022) ............................................................... 8

*Lane v. Holder*,
   703 F.3d 668 (4th Cir. 2012) ......................................................................... 11

*Libertarian Party of Va. v. Va. State Bd. of Elections*,
   No. 1:10-cv-615, 2010 U.S. Dist. LEXIS 97177 (E.D. Va. Sept. 16, 2010) .................... 5

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ............................................................................... 4, 6, 12

*Martel v. Condos*,
   No. 5:20-cv-131, 2020 U.S. Dist. LEXIS 182693 (D. Vt. Sept. 16, 2020) ...................... 9

*Md. Election Integrity, LLC v. Md. State Bd. of Elections*,
   No. 24-672, 2024 U.S. Dist. LEXIS 83541 (D. Md. May 8, 2024) ................. 9, 10, 11, 15

*Moore v. Circosta*,
   494 F. Supp. 3d 289 (M.D.N.C. 2020) ............................................................ 8, 9

*Mt. Health City Bd. of Educ. v. Doyle*,
    429 U.S. 274 (1977)........................................................................................ 5

*N.C. A. Philip Randolph Inst. v. N.C. State Bd. of Elections*,
    No. 1:20-cv-876, 2020 U.S. Dist. LEXIS 205692 (M.D.N.C. Nov. 4, 2020).................. 12

*Outdoor Amusement Bus. Ass'n v. Dep't of Homeland Sec.*,
    983 F.3d 671 (4th Cir. 2020) ......................................................................... 10

*Paher v. Cegavske*,
    No. 3:20-cv-243, 2020 WL 2089813 (D. Nev. Apr. 30, 2020) ...................................10, 11

*Passaro v. Virginia*,
    935 F.3d 243 (4th Cir. 2019) ........................................................................... 4

*Perry v. Judd*,
    471 F. App'x 219 (2012) ................................................................................ 15

*Pye v. United States*,
    269 F.3d 459 (4th Cir. 2001) ........................................................................... 4

*Richardson v. Broyhill*,
    No. 1:20-cv-424, 2020 U.S. Dist. LEXIS 270021 (M.D.N.C. May 18. 2020) ............... 16

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ......................................................................................... 3

*Swan v. Clinton*,
    100 F.3d 973 (D.C. Cir. 1996).......................................................................... 6

*United States ex rel. Rahman v. Oncology Assocs., P.C.*,
    198 F.3d 502 (4th Cir. 1999)........................................................................... 18

*United States v. Hays*,
    515 U.S. 737 (1995)........................................................................................ 9

*United States v. Wiggins*,
    50 F. Supp. 2d 512 (E.D. Va. 1999) .................................................................. 6

*White v. Daniel*,
    909 F.2d 99 (4th Cir. 1990)......................................................................... 14, 15

*White v. Ward*,
    145 F.3d 1139 (10th Cir. 1998) ....................................................................... 16

*Will v. Mich. Dep't of State Police*,
    491 U.S. 58 (1989).......................................................................................... 4

*Wood v. Raffensperger*,
    981 F.3d 1307 (11th Cir. 2020) ........................................................... 9

**Statutes and Constitutional Provisions**

28 U.S.C. § 1361 ................................................................................ 15

28 U.S.C. § 1651 ................................................................................ 17

52 U.S.C. § 20501 ............................................................................... 3

52 U.S.C. § 20510 ............................................................................. 19

52 U.S.C. § 20901 ............................................................................... 3

N.C. Const. art. III, § 7 ........................................................................ 2

N.C. Gen. Stat. § 114-2 .................................................................. 3, 12

N.C. Gen. Stat. § 163-22 .............................................................. 2, 3, 4

**Regulations**

69 Fed. Reg. 14,844 .......................................................................... 19

# INTRODUCTION

The 2024 general election has already begun. Absentee ballots were first sent out on September 20—more than three weeks ago. Nevertheless, with voting already ongoing, Petitioners seek a writ of mandamus from this Court to "order Respondents to follow existing federal and state law designed by Congress and the North Carolina legislature to ensure that North Carolina's 2024 and subsequent combined federal and state elections produce reliable results within the margin of error rate allowed." Pet. (D.E. 1) ¶ 200. But nowhere in their 227-paragraph petition do Petitioners explain how the North Carolina State Board of Elections and Attorney General Joshua H. Stein are not *already* following existing federal and state law. In essence, Petitioners ask this Court to demand that State Respondents "fix it" without ever explaining what needs fixing. This claim fails for a host of reasons.

First, this Court has no subject-matter jurisdiction. The State Board and Attorney General both enjoy sovereign immunity from this litigation, and Petitioners lack standing under Article III of the Constitution.

Second, Petitioners fail to state a claim for mandamus relief. To start, state officials cannot be subject to mandamus by federal courts under federal law. And even if this Court did have the authority to issue a writ in this case, Petitioners cannot satisfy any of the three requirements necessary to secure that extraordinary relief.

Petitioners' claim should therefore be dismissed.

# STATEMENT OF FACTS

## A.     The Parties

On August 28, 2024, petitioners United Sovereign Americans, Inc. and Richard Yost, filed this lawsuit against the North Carolina State Board of Elections, North Carolina Attorney General Joshua H. Stein (in his official capacity as the Attorney General of the State of North

Carolina), and Merrick Garland (in his official capacity as the Attorney General of the United States). Pet. (D.E. 1) ¶¶ 58-62.

United Sovereign Americans, Inc. is a nonprofit corporation incorporated in the State of Missouri. *Id.* ¶ 58. The petition does not contain any allegations about the group's membership. It does, however, allege that the organization "reviewed North Carolina's voter registration data from the 2022 general election" and commissioned expert reports purportedly analyzing that data. *Id.* ¶¶ 145-47.

Richard Yost is a North Carolina resident and voter who also performed the data analyses presented in the petition. *Id.* ¶ 69. While he is described as "an executive-level manager of all information technology aspects for United Sovereign Americans," the petition does not allege that Yost is a member of the organization. *Id.*

The North Carolina State Board of Elections is the agency in the State that has "general supervision over the primaries and elections in the State, and [has] authority to make such reasonable rules and regulations with respect to the conduct of primaries and elections as it may deem advisable" and consistent with North Carolina law. N.C. Gen. Stat. § 163-22(a). The State Board is also responsible for "advis[ing] [the county boards of elections] as to the proper methods of conducting primaries and elections." *Id.* § 163-22(c). When "necessary or advisable," the State Board investigates any irregularities in elections throughout the State and reports any "violations of the elections laws" to the State Bureau of Investigation "for further investigation and prosecution." *Id.* § 163-22(d).

North Carolina Attorney General Joshua H. Stein is the head of the North Carolina Department of Justice and is the State's chief legal officer. He is an independently elected constitutional officer. N.C. Const. art. III, § 7. His duties include, among others, representing all

state agencies and departments and defending all matters in the North Carolina appellate courts. N.C. Gen. Stat. § 114-2.

Attorney General Merrick Garland is the head of the United States Department of Justice and represents the United States in legal matters. Pet. (D.E. 1) ¶ 62.

### B.  Petitioners' Allegations

Petitioners allege that State Respondents violated certain provisions of the National Voter Registration Act, 52 U.S.C. § 20501, *et seq.*; the Help America Vote Act of 2002, *id.* § 52 U.S.C. § 20901, *et seq.*; and the North Carolina General Statutes—namely, N.C. Gen. Stat. § 163-22. Specifically, Petitioners complain of (1) inaccurate voter registration records, Pet. (D.E. 1) ¶¶ 152-56; and (2) inaccurate vote counts in the 2022 general election that exceeded the permissible error rates set out in HAVA, *id.* ¶¶ 157-78. According to them, State Respondents "have lost control of voter registration," leading to voters with "apparently invalid and/or illegal registrations vot[ing] in large numbers in North Carolina's 2022 General Election." *Id.* ¶¶ 195-196. This alleged fraud, they say, "resulted in a diluted vote to all voters including Petitioners, harming the electorate at large." *Id.* ¶ 196.

Petitioners further assert that "injunctive and/or declaratory relief is inapplicable or [in]appropriate in this matter because the harm from the 2024 election is not yet realized." *Id.* ¶ 193. Petitioners thus ask this Court to issue a writ under the All Writs Act and the Mandamus Act "formally recogniz[ing]" these alleged deficiencies and directing State Respondents to "investigate and remedy the problems exposed in [the] 2022 elections." *Id.* ¶ 227 & Conclusion.

## ARGUMENT

### I.  Legal Standard

A motion to dismiss under Rule 12(b)(1) concerns the court's authority to adjudicate the case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88 (1998). A court does not have

subject-matter jurisdiction over claims from which defendants enjoy sovereign immunity. *Allen v. Cooper*, 895 F.3d 337, 346 (4th Cir. 2018). A court also cannot exercise subject-matter jurisdiction over a party who lacks standing. *Pye v. United States*, 269 F.3d 459, 466 (4th Cir. 2001). The plaintiff bears the burden of establishing that standing exists. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

A motion to dismiss under Rule 12(b)(6) should be granted if, accepting all well-pleaded allegations as true, the complaint is not legally and factually sufficient. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). In other words, a complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court need not accept as true a complaint's legal conclusions, elements of a cause of action, or conclusory statements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II.     **This Court Lacks Jurisdiction Over the Petition**.

### A.     **Sovereign immunity bars the petition against State Respondents.**

This Court does not have jurisdiction over the claims against either the State Board of Elections or Attorney General Stein. The Eleventh Amendment generally bars suits against States in federal court unless the State has consented to being sued. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). Sovereign immunity extends not just to cases in which the State itself is named as a defendant, but also to lawsuits that name state agencies or state officers acting in their official capacities. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Passaro v. Virginia*, 935 F.3d 243, 247 (4th Cir. 2019). Because North Carolina has not voluntarily waived sovereign immunity from cases like this one, the petition cannot stand.

To start, the State Board of Elections is immune from this suit. It is a state agency that was established to oversee elections under North Carolina law. N.C. Gen. Stat. § 163-22(a).; *see*

*generally id.* It is a "quintessential arm of the State with respect to . . . making . . . official election-related decisions." *Libertarian Party of Va. v. Va. State Bd. of Elections*, No. 1:10-cv-615, 2010 U.S. Dist. LEXIS 97177, at *13-14 (E.D. Va. Sept. 16, 2010) (quoting *Mt. Health City Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)); *see also Cooper v. N.C. State Bd. of Elections*, No. 5:08-cv-423, 2009 U.S. Dist. LEXIS 132662, at *23-24 (E.D.N.C. June 12, 2009) (explaining that "the court [will] treat[ ] the Board as an arm of the state and thus within the purview of the Eleventh Amendment"). A lawsuit against the State Board is therefore functionally equivalent to a lawsuit against the State of North Carolina, and the State Board is entitled to the same protections of sovereign immunity as the State itself. *Libertarian Party of Va.*, 2010 U.S. Dist. LEXIS 97177, at *14.

Attorney General Stein is also immune from this suit. Petitioners have named the Attorney General in his official capacity. "[O]fficial-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent. Suits against state officials in their official capacity therefore should be treated as suits against the State." *Hafer*, 502 U.S. at 25 (citations omitted) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).

The *Ex Parte Young* exception to sovereign immunity applies in lawsuits against state officials seeking prospective injunctive or declaratory relief designed to correct an ongoing violation of federal law. *Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275, 292 (4th Cir. 2001). Here, though, Petitioners do not seek injunctive relief moving forward. In fact, Petitioners allege that they have opted to seek mandamus relief specifically because "injunctive and/or declaratory relief is inapplicable or [in]appropriate in this matter." Pet. (D.E. 1) ¶ 193. As a result, the *Ex*

*Parte Young* exception does not apply, and Attorney General Stein, like the State Board, is immune from this suit.

The fact that Petitioners have brought their claim under either the All Writs Act or the Mandamus Act does not alter this conclusion. Neither Congress nor the State of North Carolina has abrogated Eleventh Amendment immunity with regard to lawsuits under those statutes. *Swan v. Clinton*, 100 F.3d 973, 981 (D.C. Cir. 1996) (Mandamus Act); *In re Baldwin-United Corp.*, 770 F.2d 328, 340 (2d Cir. 1985) ("The All-Writs Act, which is itself limited by the jurisdiction of the federal courts, cannot be used to circumvent or supersede the constitutional limitations of the Eleventh Amendment."); *see also United States v. Wiggins*, 50 F. Supp. 2d 512, 516 n.2 (E.D. Va. 1999) ("[T]he Mandamus and Venue Act is not a simple waiver of sovereign immunity."). As a result, State Respondents are immune from the claims raised here.

Because the Petitioners are not seeking injunctive or declaratory relief, and no exception to Eleventh Amendment immunity applies, this Court lacks subject matter jurisdiction to proceed against either of the State Respondents.

### B. Petitioners lack standing.

This Court also lacks jurisdiction on standing grounds. To meet the requirements of constitutional standing, a plaintiff must allege that: (1) she has suffered an injury in fact that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely, as opposed to merely speculative, that the harm will be redressed by a favorable decision of the court. *Lujan*, 504 U.S. at 560-61 (citations and quotation marks omitted). Petitioners cannot satisfy these requirements. The injuries that they allege are both speculative and generalized, and therefore fail to meet the standards of Article III. Moreover, even if Petitioners' injuries could satisfy the injury requirement, it is entirely unclear what action they are even asking for to

remedy the harm. Finally, at least as to Attorney General Stein, Petitioners fail to allege that his actions, in particular, caused the injury Petitioners complain of. Because they cannot satisfy the three requirements for Article III standing, the petition should be dismissed.

1. **Petitioners lack the injury in fact needed to satisfy Article III.**

Petitioners' standing theories hinge on their allegation that they face a threat of vote dilution and voter fraud. But their theory requires too many theoretical leaps to pass muster. Petitioners hypothesize a world in which unqualified voters are able to register in droves and, then, are able to vote. This parade of horribles is entirely conjectural, in violation of the requirements of Article III. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Moreover, even if Petitioners' injury were sufficiently concrete, it is also generalized, another fatal flaw. Finally, Petitioner United Sovereign Americans fails to allege facts that demonstrate an injury to the organization or to its members, so its organizational and representative standing theories fall short as well.

a. **Petitioners' fear of injury is entirely conjectural.**

Petitioners' fear of injury is, at best, speculative. They allege "that it is reasonable to believe that systemic issues which occurred in the 2022 combined federal and state election in North Carolina will continue uncorrected in 2024, 2026, 2028, and so forth, absent intervention by this Court." Pet. (D.E. 1) ¶ 21. These problems, they say, led to voters with "apparently invalid and/or illegal registrations vot[ing] in large numbers in North Carolina's 2022 General Election." *Id.* ¶ 195. And this, in turn, will result in a "diluted vote to all voters including Petitioners, harming the electorate at large" in elections moving forward. *Id.* ¶ 196.

Generally, courts have been reluctant to accept bare allegations of vote dilution or voter fraud to support an Article III injury. Under Supreme Court precedent, injuries must be "certainly impending"; they cannot rely on speculation or conjecture to arrive at an alleged harm. *Clapper*,

568 U.S. at 409. Injuries that rely on vote-dilution theories, where harm "aris[es] out of the possibility of unlawful or invalid ballots being counted," have routinely been deemed to be "unduly speculative." *Moore v. Circosta*, 494 F. Supp. 3d 289, 312 (M.D.N.C. 2020) (citing cases); *see also Lake v. Hobbs*, 623 F. Supp. 3d 1015, 1028-29 (D. Ariz. 2022) (alleged voter-fraud injury caused by hackable voting machines was too speculative because "a long chain of hypothetical contingencies must take place for any harm to occur"); *Donald J. Trump for President, Inc. v. Boockvar*, 493 F. Supp. 3d 331, 377 (W.D. Pa. 2020) (alleged voter-fraud injury caused by unmanned drop boxes was "too speculative to be concrete").

Petitioners' fear of vote dilution is even more speculative than the injuries alleged in these cases. Petitioners offer no firm basis for believing that the 2024 election will be marred by voting irregularities or fraud. Indeed, Petitioners do not even allege that the 2022 election was tainted by vote dilution or voter fraud. They expressly admit that "it is possible that in every federal contested election supervised and certified by the State in 2022, the 'winner' received more votes than the 'loser.'" Pet. ¶ 19. But Petitioners nevertheless extrapolate from the alleged *possibility* that the 2022 election may have resulted in irregularities to the *further removed possibility* that the 2024 election will suffer from the same shortcomings. This is not the kind of "impending" injury that the Supreme Court required in *Clapper*. Petitioners' injury is therefore too speculative and conjectural to satisfy Article III.

> **b.**    **Neither of the Petitioners have suffered a particularized injury.**

Even if Petitioners had alleged an actual, non-speculative injury, they would still lack standing because their alleged injury is insufficiently particular. Petitioners claim that State Respondents did not act in accordance with the law in administering elections and that their votes have been diluted as a result. These alleged harms, however, are too generalized to confer

standing because they would apply equally to voters throughout the State—not in any particularized way to either Petitioner.

The U.S. District Court for the District of Maryland recently dismissed a similar suit to this one on precisely this basis. Earlier this year, the same organization (United Sovereign Americans) filed suit alongside another group (Maryland Election Integrity) raising, among others, a mandamus claim against the Maryland State Board of Elections based on similar allegations. *Md. Election Integrity, LLC v. Md. State Bd. of Elections*, No. 24-672, 2024 U.S. Dist. LEXIS 83541, at *2-4 (D. Md. May 8, 2024). There, the court held that "[t]o the extent that Plaintiffs [were] simply alleging that Defendant did not act in accordance with the law in administering the elections, any injury from those actions would accrue to every citizen and would not be particularized to members of" the plaintiffs' groups. *Id.* at *9. As a result, the Maryland court held that the plaintiffs lacked standing and dismissed their claims.

This holding was not unique. Courts across the country have consistently rejected vote-dilution claims on standing grounds and held that "[a] generalized grievance against allegedly illegal governmental conduct" is not "sufficient . . . to invoke the federal judicial power." *United States v. Hays*, 515 U.S. 737, 743 (1995) (applying this rule in a vote-dilution case); *Moore*, 494 F. Supp. 3d at 312-13 (no standing based on the casting of unlawful ballots because that harm is "not a concrete and particularized injury"); *see also Wood v. Raffensperger*, 981 F.3d 1307, 1314-15 (11th Cir. 2020) (same); *Martel v. Condos*, No. 5:20-cv-131, 2020 U.S. Dist. LEXIS 182693, at *13 (D. Vt. Sept. 16, 2020) ("If every voter suffers the same incremental dilution of the franchise caused by some third-party's fraudulent vote, then these voters have experienced a generalized injury."); *Paher v. Cegavske*, No. 3:20-cv-243, 2020 WL 2089813, at *5 (D. Nev.

Apr. 30, 2020) ("Plaintiffs' purported injury of having their votes diluted due to ostensible election fraud may be conceivably raised by any Nevada voter.").

That is exactly the kind of grievance that Petitioners have alleged here. They do not allege any particular injury to Yost or to any of United Sovereign Americans' members (if there are any), but rather allege an injury that (if it exists) would theoretically be shared by *all* eligible voters who cast a ballot in this year's election. Accordingly, Petitioners' claim should be dismissed. *Md. Election Integrity, LLC*, 2024 U.S. Dist. LEXIS 83541, at *9-10.

### c. United Sovereign Americans lacks organizational or representative standing.

The Petition also omits any allegations that could support organizational or representative standing. Those doctrines thus cannot support jurisdiction in this case either.

An organization may have representative standing to sue when (1) "at least one of its 'identified' members 'would otherwise have standing to sue in their own right," (2) "the interests at stake are germane to the organization's purpose," and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Outdoor Amusement Bus. Ass'n v. Dep't of Homeland Sec.*, 983 F.3d 671, 683 (4th Cir. 2020) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)). United Sovereign Americans cannot meet these requirements. To start, the Petition does not "identif[y]" *any* members of the group, much less any members who would have standing to sue in their own right. *See id.* In fact, it is not at all clear from the allegations in the Petition whether United Sovereign Americans has any members at all. Pet. (D.E. 1) ¶ 58; *see also id.* ¶ 69 (describing Richard Yost as "an executive-level manager of all information technology aspects for United Sovereign Americans," but declining to identify him as a member of the group). The Petition is equally silent as to the organization's purpose. Consequently, United Sovereign Americans

cannot establish standing to sue on behalf of its members. *See Md. Election Integrity, LLC*, 2024 U.S. Dist. LEXIS 83541, at \*8 (holding that United Sovereign Americans "lack[s] standing as representatives of [its] members," in part because it did "not purport to represent any individual members").

Nor does the organization have standing in its own right. An organization can suffer an Article III injury when its resources are diverted or its mission is frustrated. *Lane v. Holder*, 703 F.3d 668, 674-75 (4th Cir. 2012); *see also Ariz. All. for Retired Ams. v. Mayes*, No. 22-16490, 2024 U.S. App. LEXIS 23963, at \*25-26 (9th Cir. Sept. 20, 2024) (rejecting standing where complaint failed to state specific facts showing that defendant's actions frustrated the plaintiff organization's core activities). But United Sovereign Americans cannot "manufacture standing" by diverting resources to combat a speculative or imagined problem. *Clapper*, 568 U.S. at 416 ("[R]espondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."); *Cegavske*, 488 F. Supp. 3d at 1003 (similar); *Boockvar*, 493 F. Supp. 3d at 380-81 (no organizational standing where plaintiffs claimed they would have to "continue to devote their time and resources to ensure" that their supporters would not be discouraged from voting). In its Petition, United Sovereign Americans fails even to clarify what its mission is or to allege that its resources have been diverted. All the group says is that it has conducted data extraction about voting in North Carolina in past cycles and that it played an important role in filing *this* lawsuit. Pet. ¶¶ 70, 145-47. These allegations are wholly insufficient. *See Md. Election Integrity, LLC*, 2024 U.S. Dist. LEXIS 83541, at \*7 (dismissing the analogous suit because the plaintiffs did not "appear to conduct any regular activities for achieving [their] mission besides bringing the instant lawsuit and conducting investigations to support the lawsuit"); *see also Lane*, 703 F.3d at 675 (no injury

where the only resource expenditure is the undertaking of litigation to address "abstract concerns with a subject.").

> **2.** **Attorney General Stein has no connection with elections administration, and thus cannot have caused Petitioners' alleged injuries.**

Petitioners separately fail to adequately allege that their injury is fairly traceable to any action taken by Attorney General Stein. *See Lujan*, 504 U.S. at 560-61. In fact, the 227-paragraph petition contains *no* substantive allegations about Attorney General Stein at all. Other than to name him and allege that he is the Attorney General of North Carolina, Petitioners offer nothing to explain why he is involved in this case at all.

This omission is not surprising. The Attorney General has no role in administering elections. He is the head of the Department of Justice and the State's chief legal officer. In that capacity, his duties include, among others, representing and counseling the State Board. N.C. Gen. Stat. § 114-2. But the Attorney General has no role in registering voters, receiving ballots, counting votes, or certifying elections results. As a result, to the extent that Petitioners have suffered an injury at all (and they have not), that injury cannot be connected to any action taken by Attorney General Stein, and he should be dismissed as a party to this lawsuit. *See Jackson v. Leake*, No. 5:06-cv-324, 2007 U.S. Dist. LEXIS 112829, at *7 & n.4 (E.D.N.C. Mar. 30, 2007) (Attorney General has no role in enforcing elections statutes, despite his role in offering legal assistance to the State Board); *N.C. A. Philip Randolph Inst. v. N.C. State Bd. of Elections*, No. 1:20-cv-876, 2020 U.S. Dist. LEXIS 205692, at *17 (M.D.N.C. Nov. 4, 2020) (dismissing Attorney General for lack of causal connection with enforcement of certain elections statutes).

### 3. No writ from this Court can address Petitioners' complaints.

In addition to all the aforementioned jurisdictional problems, Petitioners face one more: there is no writ that this Court could fashion to address Petitioners' complaints. Petitioners thus also fail the redressability prong of Article III.

To start, it is not at all clear *what* Petitioners are asking this Court to do. Petitioners ask this Court to "order Respondents take steps, both short term and long term, to ensure the apparent errors made during the 2022 elections do not recur, and to bring the State into compliance with HAVA's specific mandate of no greater than 1 voting error out of 125,000 votes in the 2024 and subsequent federal general elections in North Carolina." Pet. ¶ 184. Even assuming there were errors leading to inaccurate results in the 2022 elections—and Petitioners specifically disclaim any such allegation (*see supra* p.8)—Petitioners fail to identify what State Respondents did or did not do that led to those errors. And they fail to articulate what "steps" need to be taken to resolve their concerns about the speculative possibility that errors may occur in the 2024 election.

The State Board, for its part, has faithfully followed federal and state law in conducting elections and is confident that no widespread error or fraud occurred in the 2022 elections. In fact, the State Board conducted a post-election audit "designed to identify certain problems or fraud, such as ballot stuffing, fraudulent manual entries, tampering with media cards, or certain ballot coding issues," and published its findings in a report on November 29, 2022.[1] That audit

---

[1]    Post-Election Audit Report for the November 8, 2022 General Election, N.C. State Bd. of Elections 2 (Nov. 29, 2022), *available at* https://s3.amazonaws.com/dl.ncsbe.gov/State_Board_Meeting_Docs/2022-11-29/Post-Election%20Audit%20Report_2022_General_Election_11292022.pdf (last accessed Oct. 4, 2024). Courts in this Circuit are permitted to consider facts and documents subject to judicial notice on a motion to dismiss. *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015).

confirmed the absence of *any* "evidence that vote totals or ballots cast were manipulated in any way." *Supra* n.1. Moreover, the State Board is committed to following any relevant federal and state laws in conducting the 2024 general election and every other election moving forward.

Petitioners' general claim of widespread error leaves too many holes for the Court to fill by itself. Because Petitioners never connect the dots between State Respondents' actions and the errors they allege, simply ordering the State Board to "fix it"—as Petitioners ask this Court to do—is not likely to lead to any resolution.

\*   \*   \*

Petitioners' efforts to establish standing are rife with problems. They have failed to allege a particularized, non-hypothetical injury. They have failed to establish representative or organizational standing. They have failed to allege that Attorney General Stein has any connection to the injury they purportedly suffer. And they have failed to articulate which of State Respondents' actions led to their alleged injuries and how those injuries are likely to recur in the future, leaving it entirely unclear what remedy this Court could fashion to address their concerns. Because Petitioners have failed to satisfy any of the elements required for Article III standing, their petition should be dismissed.

## III.     Petitioners' Claim Is Barred By Laches.

Laches provides an independent basis for dismissing the petition. *White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990); *see also E.E.O.C. v. Propak Logistics, Inc.*, 746 F.3d 145, 149 (4th Cir. 2014). Laches bars the claim of a plaintiff (1) who has shown a lack of diligence in bringing its claim when (2) that lack of diligence has prejudiced the defendant. *White*, 909 F.2d at 102. Both of those factors are clearly satisfied here.

First, Petitioners were not diligent in bringing this suit. A petitioner shows a lack of diligence when its filing of the lawsuit is "delayed inexcusably or unreasonably" after it

discovered—or could have discovered—the facts giving rise to suit. *White*, 909 F.2d at 102.

Petitioners' claim stems from voting patterns in the 2022 general elections. Despite that, they did

not bring their claim until the end of August 2024—nearly two years after the events giving rise

to their claim occurred and on the eve of an election. This is precisely the same kind of delay that

the Maryland court found gave rise to a laches defense in United Sovereign Americans' parallel

case. *Md. Election Integrity, LLC*, 2024 U.S. Dist. 83541, at *11 n.3.

      Second, Petitioners' delay prejudiced the State Board. Though courts have been reluctant

to establish any rigid timelines with respect to laches, in general, "the greater the delay, the less

the prejudice" a party is required to show. *White*, 909 F.2d at 102. In the elections context, harm

to orderly and uniform operation of elections is a "state interest the Supreme Court has

repeatedly credited." *Perry v. Judd*, 471 F. App'x 219, 227 (2012) (quoting *Clements v. Fashing*,

457 U.S. 957, 965 (1982)). Here, because Petitioners inexplicably waited to file suit until shortly

before the election, if Petitioners were to prevail, the State Board could be forced to

fundamentally change the administration of elections while voting is already ongoing. This Court

should avoid that result and hold that laches bars this suit. *See Md. Election Integrity, LLC*, 2024

U.S. Dist. 83541, at *11 n.3.

## IV.    Petitioners Fail to State a Claim for Which Relief Can Be Granted.

      In addition to these jurisdictional flaws, Petitioners' lawsuit should also be dismissed

under Rule 12(b)(6). Petitioners' only claim against the State Respondents is a mandamus claim

under the All Writs Act, 28 U.S.C. § 1651.[2] Petitioners ask that the writ compel Respondents to

---

[2]     Petitioners also raise a claim under 28 U.S.C. § 1361, the Mandamus Act. Pet. ¶¶ 209-27.
But that claim seems to be directed only to Attorney General Garland—as it must be. By its own
terms, section 1361 allows a court to compel "an officer or employee *of the United States* or any
agency thereof." 28 U.S.C. § 1361 (emphasis added). Because State Respondents are not federal
officers, this Court cannot compel them under section 1361. *Richardson v. Broyhill*, No. 1:20-cv-

"take steps" "to ensure the apparent errors made during the 2022 elections do not recur, and to bring the State into compliance with HAVA's specific mandate of no greater than 1 voting error out of 125,000 votes." Pet. ¶ 184.

Mandamus is a "drastic remedy that must be reserved for extraordinary situations." *Cumberland Cnty. Hosp. Sys., Inc. v. Burwell*, 816 F.3d 48, 52 (4th Cir. 2016). A court may enter mandamus "only where three elements co-exist: (1) the petitioner has shown a clear right to the relief sought; (2) the respondent has a clear duty to do the particular act requested by the petitioner; and (3) no other adequate remedy is available." *First Fed. Sav. & Loan Ass'n v. Baker*, 860 F.2d 135, 138 (4th Cir. 1988). Petitioners cannot satisfy any of these three elements, much less all three. Their claim should therefore be dismissed.

### A.     Petitioners have no clear right to mandamus relief.

 To start, Petitioners cannot state a claim because federal courts cannot grant mandamus relief in response to federal claims against state officials. *In re Cooper*, 349 F. App'x 815, 816 (4th Cir. 2009) (per curiam) (citing *Gurley v. Superior Ct. of Mecklenburg Cty.*, 411 F.2d 586, 587 (4th Cir. 1969)); *see also, e.g.*, *In re Brown*, 692 F. App'x 89, 91 (3d Cir. 2017); *White v. Ward*, 145 F.3d 1139, 1140 (10th Cir. 1998); *Davis v. Lansing*, 851 F.2d 72, 74 (2d Cir. 1988); *Brown v. McMaster*, No. 9:10-cv-307, 2010 U.S. Dist. LEXIS 57578, at *5 (D.S.C. June 8, 2010). Petitioners cannot claim a "clear right" to relief that this Court is categorically foreclosed from entering.

Petitioners allege that this rule does not apply to State Respondents because the power to supervise federal elections turns them into "federal officers by agency or quasi-federal officials." Pet. ¶ 204. But State Respondents are unaware of any federal court recognizing a claim against

---

424, 2020 U.S. Dist. LEXIS 270021, at *1-2 (M.D.N.C. May 18, 2020); *Johnston v. Allen*, No. 1:09-cv-46, 2009 U.S. Dist. LEXIS 129572, at *3 (M.D.N.C. Jan. 22, 2009).

state elections officials under the All Writs Act on the basis that those state officials are transformed into federal officials merely because they are bound by federal law.

What is more, even by its own terms, mandamus relief is unavailable under § 1651. Writs of mandamus under the All Writs Act are appropriate only when they are issued "in aid of [federal courts'] respective jurisdictions." 28 U.S.C. § 1651(a); *see also Gurley*, 411 F.2d at 587. Thus, federal courts cannot issue writs of mandamus in an action brought solely for the purpose of securing relief by the writ—rather, such a writ is only appropriate if it is incidental to *another* claim over which the court *does* have jurisdiction. *Gurley*, 411 F.2d at 587. Petitioners cannot satisfy that rule. Indeed, they readily concede that they have no private cause of action under any of the federal statutes that they mention in their Complaint. Pet. ¶ 193 ("Petitioners are seeking to have North Carolina election officials and/or federal officials bring the State into compliance with federal and state law . . . absent a specific existing private cause of action Petitioners could assert that affords Petitioners relief."). Petitioners cannot manufacture a "clear right" to relief where federal law declines to provide one merely by demanding a writ of mandamus.

Finally, even if Petitioners could establish a clear right to *some* form of mandamus relief, it is entirely unclear what that relief should look like because Petitioners never make clear *how* they want State Respondents to change their current behavior. Because Petitioners have not even stated clearly *what* relief they are seeking, it is impossible for them to establish that they have a right—much less a *clear right*—to that remedy.

### B. The State Respondents have no "clear duty" to provide Petitioners' chosen remedies.

Petitioners likewise cannot establish that State Respondents have any "clear duty" to provide their desired relief. *See First Fed. Sav. & Loan Ass'n*, 860 F.2d at 138. Because

Petitioners have not even clarified *what* their desired relief is, *see supra* pp. 13-14, it is impossible to find that State Respondents have a "clear duty" to provide such relief.

State Respondents agree that they are bound by HAVA, the NVRA, and North Carolina law. But State Respondents have been faithfully following those laws in administering the State's elections. And Petitioners have failed to advance any plausible allegations to the contrary.[3] Petitioners cannot get a writ of mandamus ordering State Respondents to comply with laws they are already following. If they could, the courthouse doors would be flung wide to any petitioner who wished to underscore an officer's legal obligations through a writ of mandamus. And Petitioners have failed to identify any other specific "duties" that they believe State Respondents have neglected to uphold. Mandamus is therefore unavailable. *See First Fed. Sav. & Loan Ass'n*, 860 F.2d at 138 (mandamus will lie only if the "alleged duty to act . . . is so plainly prescribed as to be free of doubt").

### C. Petitioners have an alternative route to relief.

Finally, because state law affords Petitioners alternative paths to relief, mandamus is not available. Where "other adequate means to attain the relief exist," including administrative procedures, "the existence of [those] procedures will preclude the issuance of a writ of mandamus." *United States ex rel. Rahman v. Oncology Assocs., P.C.*, 198 F.3d 502, 515 (4th Cir. 1999).

---

[3]     The closest Petitioners come to alleging a legal violation is in the portions of their Petition that relate to HAVA's requirements involving the "error rate of the voting system in counting ballots." *See, e.g.*, Pet. ¶¶ 24-46. Petitioners' actual allegations, however, are focused on errors on the *voter rolls* arising out of alleged registration issues. Their Petition does not seem to include any concrete allegations about problematic error rates among *voting machines*—the focus of HAVA's requirements. This deeply flawed legal analysis cannot be used to support Petitioners' mandamus claim.

HAVA, for one, requires every State to provide an "administrative complaint procedure[ ] to remedy grievances." 52 U.S.C. § 21112. Consistent with that mandate, the State Board has created a detailed administrative scheme for "the resolution of any complaint alleging a violation of any provision of Title III of HAVA." 69 Fed. Reg. 14,844. These procedures allow "[a]ny person who believes that there is a violation of Title III" of HAVA to file a complaint. *Id.* If the complainant requests one, the State Board must hold a hearing and consider the relevant testimony and evidence. *Id.* Finally, if the Board "determines that a violation has occurred, the Board, acting through the Board or designee, shall provide the appropriate remedy" within 90 days of the complaint being filed. *Id.*

The NVRA provides an alternative process, too. Under that law, putative plaintiffs are to provide the chief election official of the State written notice of an alleged violation before filing a lawsuit. 52 U.S.C. § 20510(b)(1). Petitioners have not alleged that they have done so. Moreover, the NVRA does not authorize mandamus petitions to address violations. Rather, after pre-suit notice, a putative plaintiff may "bring a civil action . . . for declaratory or injunctive relief." *Id.* § 20510(b)(2).

Petitioners offer no explanation for their failure to seek relief under these laws. Whatever the reason, though, the mere existence of these alternative avenues for relief is fatal to Petitioners' effort to secure mandamus.

*       *       *

Petitioners bear the burden of demonstrating that their right to issuance of a mandamus is "clear and indisputable." *First Fed. Sav. & Loan Ass'n*, 860 F.2d at 138. Because Petitioners have failed to satisfy a single one of the three requisite elements, their mandamus claim must be dismissed. *Id.*

**CONCLUSION**

For the reasons stated above, State Respondents ask this Court to dismiss the petition with prejudice.

Respectfully submitted, this 9th day of October 2024.

Sarah G. Boyce
Deputy Attorney General and General Counsel
N.C. State Bar No. 56896
SBoyce@ncdoj.gov

Mary Carla Babb
Special Deputy Attorney General
N.C. State Bar No. 25731
MCBabb@ncdoj.gov

Terence Steed
Special Deputy Attorney General
N.C. State Bar No. 52809
TSteed@ncdoj.gov

/s/ South A. Moore
South A. Moore
Deputy General Counsel
N.C. State Bar No. 55175
SMoore@ncdoj.gov

North Carolina Department of Justice
P.O. Box 629
Raleigh, NC 27602
Phone: 919-716-6900
Fax: 919-716-6758

*Counsel for State Respondents*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.2(f)(3)**

Undersigned counsel certifies that this memorandum of law is in compliance Local Rule 7.2(f)(3) in that the brief, including headings, footnotes, citations, and quotations, contains no more than 8,400 words as indicated by Word, the program used to prepare the brief.

This the 9th day of October 2024.

/s/ South A. Moore
South A. Moore
Deputy General Counsel

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was filed electronically with the Clerk of Court

using the CM/ECF system, which will send notification of such filing to the below listed

attorneys for Petitioners:

Bruce L. Castor, Jr.
Van der Veen, Hartshorn, Levin & Lindheim
1219 Spruce Street
Philadelphia, PA 19107
bcastor@mtvlaw.com
Phone: (215) 546-1000

Matthew P. Ceradini
Ceradini Law, PLLC
8480 Honeycutt Road, Suite 200
Raleigh, NC 27615
m.ceradini@ceradinilaw.com
Phone: (919) 931-0702

*Counsel for Petitioners*

This the 9th day of October 2024.

/s/ South A. Moore
South A. Moore
Deputy General Counsel