Bruce L. Castor, Jr.
PA I.D. No. 46370
Attorneys for Petitioners

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA – WESTERN DIVISION**

| | |
|---|---|
| UNITED SOVEREIGN AMERICANS, INC. <br> 167 Lamp and Lantern Village, Suite 194 <br> Chesterfield, MO 63017 | CIVIL ACTION <br><br> Case No.: 5:24-cv-500 |
| *And* | |
| RICHARD YOST <br> 3652 Jordan Circle <br> Franklinton, NC 27525 | HON. RICHARD E. MYER II <br><br> MAG. BRIAN S. MEYERS |
| *Petitioners,* <br> v. | |
| NORTH CAROLINA STATE BOARD OF ELECTIONS <br> P.O. Box 27255 <br> Raleigh, NC 27611 | **PETITIONERS' RESPONSE IN OPPOSITION TO RESPONDENTS MOTION TO DISMISS** |
| *And* | |
| JOSH STEIN, IN HIS OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF NORTH CAROLINA <br> 114 W Edenton Street <br> Raleigh, NC 27603 | |
| *And* | |
| MERRICK GARLAND, IN HIS OFFICAL CAPACITY AS ATTORNEY GENERAL OF THE UNITED STATES <br> 290 North Carolina Avenue NW <br> Washington DC 20530 | |
| *Respondents.* | |

i

**Table of Contents**

Table of Authorities.................................................................................................................iii

I.    Summary of the Argument.................................................................................................. 1

II.   Argument ............................................................................................................................ 3

    A.    The Complaint contains allegations sufficient to invoke federal jurisdiction ................... 4

    B.    Petitioners' claims are not barred by Eleventh Amendment sovereign immunity protection

    by virtue of the *Ex parte Young* exception. .................................................................. 9

    C.    Petitioners have stated a valid claim under the All Writs Act, as the state election agency

    becomes a quasi-federal agency subject to Congressional oversight when regulating and

    administering federal elections, and therefore *mandamus* relief under the All Writs Act is the

    only remedy available to adjudicate Petitioners' claims. ........................................................11

    D.    Petitioners' claims are not barred by the *Laches* defense because the Complaint

    demonstrated sufficient due diligence. .................................................................... 15

III.  Conclusion .................................................................................................................. 16

**Table of Authorities**

**Cases**                     **Page(s)**

*Anderson v. United States*,
 417 U.S. 211 (1974)…………………………………………………...…………12

Antrican v. Odom,
 290 F.3d 178, 186 (4th Cir. 2002)…………………………………….……………10

*Baker v. Carr*,
 369 U.S. 186 (1962)…………………………………….……………………………5

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007).. …………………………………………………………………4

*Bragg v. West Virginia Coal Ass'n*,
 248 F.3d 275, 292 (4th Cir.2001)……………………………………...…………10

Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC.,
 713 F.3d 175, 182 (4th Cir. 2013)……………………………………..…………...6

*CompuSpa, Inc. v. IBM*, 228
 F. Supp. 2d 613 (2002)………………………………………………….…………3

*Cheney v. United States Dist. Ct.*,
 542 U.S. 367 (2004)……………………………………………………………...14

*Clapper v. Amnesty Int'l USA*
 568 U.S. 398 (2013)………………………………………………….…………4

*Duke Power Co. v. Carolina Environmental Study Group, Inc.*,
 438 U.S. 59, 79 (1978)…………………………………………………………6

*Environmental Defense Fund, Inc. v. Alexander*,
 614 F.2d 474, 478 (5th Cir.)…………………………………………..…………15

*Ex parte Young*,
 209 U.S. 123 (1908)…………………………………………………...…1, 9, 10

*Federal Election Comm'n v. Akins*,
 524 U.S. 11 (1998)…………………………………...…………...…………5

*Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
 528 U.S. 167 (2000)……………………………………………………………6

*Gill v. Whitford*,
   585 U.S. 48 (2018)………………………………………………………..……….4

*Gomillion v. Lightfoot*,
   364 U.S. 339 (1960)…………………………………………………..………….12

*Gray v. Sanders*,
   372 U.S. 368 (1963)………………………………………………....……..….4, 5, 12

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982)…………………………………………………………….6

*Hollingsworth v. Perry*,
   558 U.S. 183 (2010)……………………………………..………………….14

*Hutto v. S.C. Ret. Sys.*,
   773 F.3d 536, 543 (4th Cir. 2014)……………………………………………9

*Ibarra v. United States*,
   120 F.3d 472, 474 (4th Cir. 1997)…………………………………………….3

*In re: Coy*,
   127 U.S. 731 (1888)…………………………………..…………………….12

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)……………………………………………….…….1, 4, 5

*Massachusetts v. Envtl. Prot. Agency*,
   549 U.S. 497 (2007)………………………………………………..…………5

*Md. Election Integrity, LLC. V. Md. State Bd. of Elections*,
   No. 24-672, 2024 U.S Dist. WL 2053773………………………………………15

*Milliken v. Bradley*,
   433 U.S. 267, 289 (1977)…………………………………..…………………10

*Oregon v. Mitchell*,
   400 U.S. 112 (1970)………………………………………………………...12

*Outdoor Amusement Bus. Ass'n, Inc. v. Dep't of Homeland Sec.*,
   983 F.3d 671, 683 (4th Cir. 2020)……………………………………………6

*Reynolds v. Sims*,
   377 U.S. 533 (1964)…………………………………..……………………12

iv

*Spokeo, Inc. v. Robins*,
     578 U.S. 330 (2016)……………………………………...……………...……4

*Summers v. Earth Island Inst.*,
     555 U.S. 488 (2009)……………………………………………………………6

*Signal Hill Capital Group LLC v. CMO Int'l ApS*,
     2014 U.S. Dist. LEXIS 81967. ………………………….…………………….……3

*Verizon Md., Inc. v. Public Serv. Comm'n of Md.*,
     535 U.S. 635 (2002)…………………………………………………………….……2

*White v. Daniel*,
     909 F.2d 99, 102 (4th Cir. 1990)……………………………………..…………..15

*Wilbur v. United States*,
     281 U.S. 206 (1930)………………………………………………………………14

*Ibarra v. United States*,
     120 F.3d 472, 474 (4th Cir. 1997) …………………………………………...…..3

**Statutes**                                                                                    **Page(s)**

28 U.S.C. § 1651(a)…………………………………………...…………………14

52 U.S.C. § 20501………………………………………………………...………..2

52 U.S.C. §§ 20501(b)(3)-(4)……………………………………………………13

52 U.S.C. § 20507(a)(4)………………………………………………………13

52 U.S.C. § 21081(a)(1)(A)(ii)……………………………………………...……13

52 U.S.C. § 21081(a)(5)………………………………………………………13

52 U.S.C. § 21083(a)(1)(A)…………………………………………………….13

52 U.S.C. § 20901………………………………………………………………..2

N.C. Gen State § 163-22……………………………………..…………………...12, 14

N.C. Gen Stat. § 163-28…………………………………………………………14

N.C. Gen Stat. § 163-82.27 …………………………………………...…………14

**Other Authorities**                                                           **Page(s)**

U.S. Const. art. I, § 4……………………………………………………………2, 11, 12

U.S. Const. art. I, § 8, cl. 18……………………………………...……………………13

U.S. Const. art. III, § 2……………………………………………….………………4

## I.    Summary of the Argument

Respondent North Carolina State Board of Elections[1] asserts that this Court lacks subject matter jurisdiction in the above-captioned matter because Petitioners United Sovereign Americans Inc. (hereinafter "USA") and Richard Yost lack Article III standing. A complaint must simply allege standing; standing need not be proven at the pleading stage. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Standing ultimately requires injury, causation, and redressability, all of which are alleged in the Complaint. Qualified voters have constitutionally protected voting rights, and that an agency's failure to adhere to state and federal election laws amounts to a deprivation of that legally protected interest. These principles fit squarely within the purview of Petitioners' allegations. Petitioners alleged actions by Respondent which caused injury to their right to vote. As further explained below, the Complaint appropriately alleges a particularized injury and imminent risk of future harm rather than a generalized grievance shared by the community. Petitioners respectfully suggest they possess standing to invoke federal jurisdiction.

Respondent also contends that Petitioners' claims are barred by the Eleventh Amendment, which in most instances state officials are afforded sovereign immunity.[2] However, Eleventh Amendment sovereign immunity is subject to several exceptions, including that established by the Supreme Court in *Ex parte Young*. 209 U.S. 123 (1908). The *Young* exception properly

---

[1] To the extent the North Carolina Attorney General and United States Attorney General does not have a role in the time, place, and manner of federal elections, or in their conduct, within North Carolina, Plaintiffs concur that the claim against both Attorneys General should be dismissed.

[2] Curiously, the text of the Eleventh Amendment seems to be clear that States may not be sued in federal court by citizens of other states.  It does not say that same prohibition extends to suits in federal court against a state by a citizen of that same state.  Supreme Court authority *has* extended Eleventh Amendment immunity to suits brought in federal court against a state by a citizen of that same state (subject to exceptions), but here Respondent has not cited that authority despite Petitioner Yost being a citizen of North Carolina to whom, on its face without more, the Eleventh Amendment does not apply.

1

permits lawsuits against state agencies where a plaintiff alleges an ongoing violation of federal law and seeks prospective relief as a means of addressing that violation. *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)*.* Here, the *mandamus* relief Petitioners request in the Complaint is prospective, and therefore *Young* does not allow Respondent to invoke Eleventh Amendment sovereign immunity as a means of precluding Petitioners' claims.

Respondent contends that Petitioners have failed to state a valid claim under the All Writs Act because the requested relief is not "in aid of" a matter over which this Court has jurisdiction, *mandamus* is not "necessary or appropriate" to resolve Petitioners' claims, and such exceeds the permissible scope of a writ of *mandamus*. As Respondent argues that they need not comply with Congressional mandates simply because they are state officials, this is a case, then, of first impression, and accordingly the cases cited in support of Respondent's argument offer little guidance. By including language in the Elections Clause, U.S. Const., art. I, § 4, the authors or "Framers" of the Constitution reserved to Congress the ultimate authority to regulate federal elections conducted by the several states.  Congress has exercised this power to supersede the states through legislation such as the National Voter Registration Act[3] (*hereinafter* "NVRA"), and the Help America Vote Act[4] (*hereinafter* "HAVA"). Further, by enacting the All Writs Act, Congress created an enforcement mechanism by which federal courts become empowered to compel state election agencies to comply with mandates of Congress in the supervision of federal elections. Petitioners assert that a state election agency supervising federal elections becomes a quasi-federal agency, and thus is subject to Congressional oversight enforced by federal courts when carrying out any election-related duties delegated to them by the state legislature to

---

[3] 52 U.S.C. §§ 20501 *et seq*.
[4] 52 U.S.C. §§ 20901 *et seq*.

regulate and administer federal elections. This crucial departure from the concepts of dual sovereignty and federalism makes a writ of *mandamus* both appropriate *and* necessary to properly adjudicate Petitioners' claims that the state election agency has failed in its duty.

Lastly, Respondent asserts a *Laches* defense, arguing Petitioners were not diligent in bringing this suit. In order to bring a suit of this magnitude, Petitioners needed time to request all the election data from the Respondent, compile all the data, and comprehensively analyze such data in a fair and accurate manner. Once that information was processed, the Petitioner wrote letters notifying the Respondent of their findings. Petitioners then needed to wait a reasonable length of time for Respondent to address Petitioners' concerns. When Respondent subsequently did nothing to correct the issues raised, Petitioners engaged counsel to research and file the present action. There was no inexcusable delay on behalf of the Petitioners. It is only after no response that this suit was filed. Further, the Respondent asserts that any remedy in this case "would fundamentally change the administration of elections", Motion to Dismiss, Doc 15 ¶14-15. Thus, rather than seeking a solution to the voter discrepancies, the Respondent claims any solution would be too difficult to administer. Petitioners suggest this is a factual question in dispute, that a remedy could be crafted, and thus does not merit argument here.

## II. Argument

In response to a Motion to Dismiss, a Petitioner is not required to prove factual allegations to overcome a 12(b)(6) motion. *CompuSpa, Inc. v. IBM*, 228 F. Supp. 2d 613, 624-625 (2002). When ruling on a motion under Rule 12(b)(6) …the court must 'accept the well-pled allegations of the complaint as true,' and 'construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff.'" *Signal Hill Capital Group LLC v. CMO Int'l ApS*, 2014 U.S. Dist. LEXIS 81967 (citing *Ibarra v. United States*, 120 F.3d 472, 474 (4th

3

Cir. 1997)). "To survive a motion to dismiss, the factual allegations of a complaint 'must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Id*. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This Court should deny the Respondent's Motion to Dismiss because this Court has subject matter jurisdiction over Petitioners, and Petitioners submitted a well pleaded complaint.

## A. The Complaint contains allegations sufficient to invoke federal jurisdiction

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. "One element of the case-or-controversy requirement [of Article III] is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (internal citations and quotation marks omitted). To invoke federal jurisdiction, a plaintiff must satisfy the "irreducible" minimum requirements of Article III standing: (1) injury-in-fact; (2) causation; and (3) redressability. *Lujan, 504 U.S. at 560-561*. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). In other words, the injury must affect the "plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560. See *Gill v. Whitford*, 585 U.S. 48, 65 (2018) ("a person's right to vote is individual and personal in nature") (internal citation and quotation marks omitted). The injury must also be actual or imminent, not speculative, meaning the injury must have already occurred or be likely to occur in the near future. *Clapper*, 568 U.S. at 409.

It is a well-recognized principle that any person whose right to vote has been impaired has standing to sue. *Gray v. Sanders,* 372 U.S. 368, 375 (1963). Qualified voters have a

constitutionally protected right to cast their ballots and have their votes counted and reported correctly, undiluted by illegal ballots. *Id.* at 380. As stated by the Supreme Court regarding voting rights, "the most basic of political rights, [are] sufficiently concrete and specific" to establish standing. *Federal Election Comm'n v. Akins*, 524 U.S. 11, 24 (1998). Respondent argues that Petitioners' claims amount to mere generalized grievances concerning improper government conduct and therefore have failed to establish Article III standing. Generalized grievances in the context of standing refer to instances where a plaintiff's harm concerns "his and every citizen's interest in proper application of the Constitution and laws and seeking relief that no more directly and tangibly benefits him than it does the public at large." *Lujan*, 504 U.S. at 573. However, the Supreme Court has previously held that a group of qualified voters alleging that a state's action diminished the effectiveness of their vote did not amount to a generalized grievance. *Baker v. Carr*, 369 U.S. 186, 208 (1962).

While persons do not have standing to sue when they claim an injury that is suffered by all members of the public, "where the harm is concrete, though widely shared, the Court has found 'injury in fact.'" *Akins*, 524 U.S. at 24. The Supreme Court has been clear that "where large numbers of voters suffer interference with voting rights…" the interests related to that are sufficiently concrete to obtain the standing necessary to seek redress under Article III. *Id.* In *Massachusetts v. Envtl. Prot. Agency*, the "…EPA maintain[ed] that because greenhouse gas emissions inflict widespread harm, the doctrine of standing presents an insuperable jurisdictional obstacle." 549 U.S. 497, 517 (2007). The Court found that the "EPA's steadfast refusal to regulate greenhouse gas emissions presents a risk of harm to Massachusetts that is both 'actual' and 'imminent.'" *Id.* at 498-499. Further, the court reasoned that there is a substantial likelihood that the relief requested would prompt the EPA to reduce the risk. *Massachusetts v. E.P.A.*, 549

U.S. 497, 521 (2007)(citing) *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 79 (1978). Here, the harms implicating voting rights are arguably widespread (as, *arguendo*, are the effects of greenhouse gas emissions). In addition, this Court's involvement is the only solution that would aid in Petitioners request to prompt Respondent to evaluate and correct the voter discrepancies. Thus, Petitioners complaining of election-related injuries from Respondent also have standing to seek review by federal courts under Article III, just as did those seeking relief in the cases cited above.

The Supreme Court has stated that when a plaintiff is a group or organization representing several persons with similar injuries, such "representational standing" exists when an organization's "members would otherwise have standing to sue in their own right, the interests at stake are germane to that organization's purpose, and neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000); *Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013). Additionally, an organization can assert an injury in its own right when a defendant's actions impede efforts to promulgate its organizational mission. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). To establish such organizational standing, the organization must advance allegations identifying at least one (1) member who has suffered or will suffer injury. *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (emphasis added); *see Outdoor Amusement Bus. Ass'n, Inc. v. Dep't of Homeland Sec.*, 983 F.3d 671, 683 (4th Cir. 2020). However, the specificity requirements do not mandate identification of all individuals who were harmed if "all the members of the organization are affected by the challenged activity." *Id.* (*quoting Summers v. Earth Island Inst.*, 555 U.S. 488, 498-99 (2009)).

The Complaint here alleges standing sufficient to establish subject-matter jurisdiction under Article III. Plaintiff Richard Yost is a North Carolina citizen, voter, and current Chief Judge of Elections for Granville County, North Carolina. Plaintiff is a member of co-Plaintiff United Sovereign Americans ("USA") in North Carolina. Plaintiff Yost with the help of USA requested and gathered documentation regarding the statewide voter registration database and uncovered numerous registration and voting violations. Plaintiff Yost is an identifiable member of USA who would have standing to bring a suit individually. Further the interests at stake relate to the heart of USA as its mission is to ensure all Unites States elections are fair, accurate, and trustworthy; the very heart of their claim. Finally, the claim set forth in this matter is not for an individual of the organization, rather it is for the benefit of all legally registered voters, protecting their votes against the dilution that occurred in 2022, and prevent further voter inaccuracies in future federal elections regulated by the State of North Carolina.

Respondent's assertion that Petitioners lack standing by virtue of Petitioners' failure to assert a legally cognizable injury, and likelihood of *future* harm in *subsequent* federal elections administered by Respondent, ignores the factual allegations Petitioners have plainly stated in the Complaint. Petitioners contend they are entirely reasonable in fearing that the demonstrated and pled issues which occurred in the 2022 federal election in North Carolina will reoccur since North Carolina election officials, as alleged in the Complaint, have done *nothing* to correct those errors despite notice, again, as specifically alleged in the Complaint..

Turning to the issue of whether Petitioners' injury constitutes simply a generalized grievance shared by the whole community, Petitioners suggest it was not the whole community that sent written inquiries to agents of Respondent requesting transparency as to North Carolina's compliance with federal election laws and explanations regarding documented voter and

7

registration irregularities. The whole community did not comb through innumerable pages of hard voter data to ascertain the accuracy of voter registration rolls, Petitioners did that. The whole community did not create a comprehensive report on apparent registration and voting violations, Petitioners did. Petitioners, *not* Respondent, informed the whole community of these issues, and the whole community could not have realized them on its own. Petitioners, themselves, took these actions which distinguishes Petitioners from the community at large -- actions which are not in the abstract. Rather, Petitioners have advanced multiple and specific allegations concerning, *inter alia*, discrepancies in voting records, which suggest that this is not merely a speculative issue, but a very real problem causing Petitioner and Petitioner's members legitimate concerns over whether North Carolina is counting and considering their votes in such a way that Petitioners' votes are undiluted.

In sum, for purposes of a Motion to Dismiss, the Complaint states a sufficiently plausible cause of action at the early stages of litigation to confer presumptive standing upon Petitioners. Petitioners set forth in the Complaint a series of factual allegations establishing, if true, that the named Petitioner is an individual qualified to vote in North Carolina whose votes were diluted in 2022 through Respondent's failure to ensure that North Carolina's voting systems and voter registration records met certain federal standards prior to certification. Though Respondent received notice of these apparent errors, they did not take sufficient (or any) actions to investigate the cause for these apparent errors reasonably leading Petitioners to believe that the same or similar apparent errors will recur in 2024, 2026, and in every subsequent federal election if Respondent fails to investigate and, where warranted, correct these anomalies going forward. Thus, the complaint is not moot due to the cyclical nature of the election process. If the errors identified are not corrected, election integrity will continue to be called into question. Petitioners

have identified said anomalies and have pled they brought them to the attention of North Carolina election officials who bear the responsibility delegated by the General Assembly to regulate federal elections. No other means exist in the law to require a government official to perform his duties apart from a writ of *mandamus*.

Petitioners have brought this action in an effort to require, through court order, the state of North Carolina to investigate and take appropriate action concerning the apparent errors Petitioners have brought to Respondent's attention. Petitioners do not seek this Court to order Respondent *how* to perform its job. Petitioners seek court intervention to require Respondent simply to *do* its job and take whatever action Respondent considers appropriate in order to comply with Congressional mandates. Petitioners contend the Court ought to order Respondent to report to the Court's satisfaction the reasons for such significant discrepancies, for example, how it is possible that in 2022, various North Carolina county boards of elections could possibly have certified a federal election where more votes were counted than ballots cast? Petitioners suggest they have satisfied the injury-in-fact requirement under Article III, in order to confer subject-matter jurisdiction upon this Court in order to seek the requested relief.

### B. Petitioners' claims are not barred by Eleventh Amendment sovereign immunity protection by virtue of the *Ex parte Young* exception.

The Eleventh Amendment affords sovereign immunity to government entities, subject to several exceptions. *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014). Ordinarily, then, citizens are precluded from filing federal lawsuits against state officials. *Id*. One such exception, pursuant to the doctrine announced in *Ex parte Young*, is applicable where "a state official is sued in his official capacity for purely injunctive relief." *Id*. (citing *Young*, 209 U.S. at 155-56). The applicability of *Young* concerns complaints where actions must seek only prospective

9

injunctive relief." *Antrican v. Odom*, 290 F.3d 178, 186 (4th Cir. 2002) (citing) *Milliken v. Bradley*, 433 U.S. 267, 289 (1977).

In *Young*, the Supreme Court created a mechanism by which officials and government entities ordinarily afforded Eleventh Amendment protections are stripped of sovereign immunity A State officer acting in violation of federal law thus loses "the 'cloak' of State immunity," *Bragg v. West Virginia Coal Ass'n*, 248 F.3d 275, 292 (4th Cir.2001), cert. denied, 534 U.S. 1113, 122 (2002), because in such a situation, "[t]he State has no power to impart to [the official] any immunity from responsibility to the supreme authority of the United States." *Ex Parte Young*, 209 U.S. at 160.

In support of their sovereign immunity argument, Respondent briefly discusses the *Young* doctrine. Respondent avers *Young* is inapplicable to Petitioners' claims on the basis that Petitioners do not seek *injunctive* or *declaratory* relief, completely ignoring the nature of *mandamus*. Petitioners argue that *mandamus* relief and injunctive relief are functionally equivalent in the *Young* context, as both are forms of equitable relief and each form of relief is prospective in nature. Conversely, the *Young* exception is wholly inapplicable where a plaintiff is seeking monetary damages, which Petitioners notably have not done. *Antrican v. Odom,* 290 F.3d 178, 185 (4th Cir. 2002) ("*Ex Parte Young* actions must seek only prospective injunctive relief"). As such, Petitioners contend that the Supreme Court, through *Young* and its progeny, did not mean to apply the exception to plaintiffs seeking declaratory and/or injunctive relief to the exclusion of those requesting other equitable relief such as that Petitioners seek here through the more precise *mandamus*.

It defies logic that Respondent contends, essentially, that since relief in *mandamus* is not the same as relief by injunction, and the *Young* exception does not apply. Both injunctive relief

and *mandamus* relief in the present context would seek this Court to order Respondent to perform its non-discretionary duty with Petitioners at no time alleging monetary damages. Respondent premises its argument on injunctive relief being a different form of relief than *mandamus* relief, but their argument fails because under the current factual pattern, the two (2) forms of equitable relief are functionally the same. Accordingly, by application of the *Young* exception Respondent is not afforded Eleventh Amendment sovereign immunity in this matter

**C.** **Petitioners have stated a valid claim under the All Writs Act, as the state election agency becomes a quasi-federal agency subject to Congressional oversight when regulating and administering federal elections, and therefore *mandamus* relief under the All Writs Act is the only remedy available to adjudicate Petitioners' claims.**

Under the Elections Clause, Congress conferred to individual state legislatures the authority to conduct statewide federal elections. U.S. Const. art. I, § 4. The Constitution's Framers' intent is clear upon a plain reading of the Constitution. The various states have presumptive authority to regulate and administer the election of all elected federal officers. However, by including the language "…but the Congress may at any time by Law make or alter such Regulations," the Framers clearly and unambiguously intended Congress retain the ultimate authority under the Constitution to regulate federal elections. U.S. Const. art. I, § 4. Thus, the Constitution spells out that the default authority to regulate federal elections lies with the several states in the absence of acts of Congress. This makes the states subordinate to Congress should Congress choose to act. The Framers intentionally intertwined the powers of the various states with those of Congress in the conducting of federal elections, while making certain Congress maintained the ultimate power over the selection of its own members, thereby carving out a narrow exception to the principles of dual sovereignty and federalism. Accordingly, the Constitution reserves to Congress the ultimate power to regulate federal elections, while

11

simultaneously delegating the presumptive power to individual state legislatures. The North Carolina General Assembly has further delegated the state's power to regulate federal elections to Respondent State Board of Elections. N.C. Gen State § 163-22. Respondent State Board of Elections, though not a federal officer *per se*, Constitutionally and by necessity, became a quasi-federal agency by act of the North Carolina General Assembly. Thus, Respondent is required to carry out both state election statutes *and* federal election statutes passed by Congress, including HAVA and NVRA. In fact, they have no choice but to do so.

While a state agency, generally, is insulated from federal judicial review when exercising power within the exclusive domain of a state interest, "such insulation is not carried over when state power is used as an instrument for circumventing a federally protected right." *Gray*, 372 U.S. at 372 (citing *Gomillion v. Lightfoot*, 364 U.S. 339, 347 (1960)). Federal courts regard the right to vote in a fairly conducted election as federally protected, *Reynolds v. Sims*, 377 U.S. 533, 554-55 (1964), and the Supreme Court decreed that Congress has authority under the Constitution's Necessary and Proper Clause to regulate any activity during a mixed federal/state election that exposes the federal election process to potential misuse, whether that harm materializes or not. *In re: Coy*, 127 U.S. 731, 752 (1888). "Every voter in a federal…election…whether he votes for a candidate with little chance of winning or for one with little chance of losing, has a right under the Constitution to have his vote fairly counted, without its being distorted by fraudulently cast votes. *Anderson v. United States*, 417 U.S. 211, 227 (1974). "[T]he right to vote freely for a candidate of one's choice is of the essence of a democratic society," *Oregan v. Mitchell*, 400 U.S. 112, 138-39 (1970). Congress chose to exercise its powers under the Elections Clause and the Necessary and Proper Clause to intervene in North Carolina's otherwise absolute constitutional authority to regulate federal elections by

12

enacting federal election laws including HAVA and NVRA. U.S. Const. art. I, § 4; U.S. Const. art. I, § 8, cl. 18. In doing so, Congress effectively, has deputized the legislature in North Carolina to carry out its will. The legislature then delegated that responsibility from Congress to Respondent here making Respondent directly answerable to the will of Congress.

Under HAVA, two (2) provisions at issue impose mandatory language on election officials. For example, 52 U.S.C. § 21081(a)(5) states that the "error rate of [a] voting system in counting ballots…shall comply with the error rate standards established under section 3.2.1. of the voting systems standards issued by the Federal Election Commission[.]" Use of the word "shall" constitutes mandatory language. Furthermore, 52 U.S.C. § 21081(a)(1)(A)(ii) states voting systems "shall…provide the voter with the opportunity (in a private and independent manner) to change the ballot or correct any error before the ballot is cast and counted (including the opportunity to correct the error through the issuance of a replacement ballot if the voter was otherwise unable to change the ballot or correct any error.)" The use of "shall," again, constitutes mandatory language. Here, the requirement is for voting systems, but election officials subject to judicial authority are responsible for configuring and managing voting machines. NVRA likewise contains mandatory language. For example, "each State shall…conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of death of the registrant; or a change in the residence of the registrant." 52 U.S.C. § 20507(a)(4).

NVRA exists in part "to protect the integrity of the electoral process" and "to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. §§ 20501(b)(3)-(4). Similarly, HAVA mandates that voter roll databases contain only registrations of qualified citizen voters residing in that state. 52 U.S.C. § 21083(a)(1)(A). Maintaining the accuracy of voter rolls

and voting systems, therefore, is required under the Constitution to uphold the right of the people to choose their representatives. The requirements of NVRA and HAVA are mirrored in North Carolina's election laws. N.C. Gen Stat. § 163-82.27 and N.C. Under North Carolina election laws, the State Election Board, was established as an independent agency. N.C. Gen Stat. § 163-28. The State Board of Elections oversees and regulates voter registration procedures and the conduct of elections throughout the state. N.C. Gen State § 163-22. Further, the State Board of Elections must maintain the accuracy of the statewide voter registration database. Accordingly, the State Board of Elections, acting in its capacity as a quasi-federal agency, must ensure compliance with NVRA and HAVA when regulating and administering federal elections. A writ of *mandamus* is the only existing enforcement mechanism through which Petitioners may seek to hold the State Board of Elections accountable to Congress for refusing to comply with Congressional legislative mandates.

The All Writs Act grants this Court the power to "issue all writs necessary or appropriate in the aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). A writ of mandamus is warranted where the moving party establishes that "(1) no other adequate means [exist] to attain the relief he desires, (2) the party's right to issuance of the writ is clear and indisputable, and (3) the writ is appropriate under the circumstances." *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (quoting *Cheney v. United States Dist. Ct.*, 542 U.S. 367, 380-381 (2004)) (internal quotation marks omitted). Writs of mandamus apply to ministerial actions. A "ministerial action" is a duty in a particular situation so plainly prescribed, as is the case with respect to the mandatory HAVA and NVRA language cited above, as to be free from doubt and equivalent to a positive command. *Wilbur v. United States*, 281 U.S. 206, 218 (1930). *Mandamus* under the All Writs Act is a remedy reserved for extraordinary circumstances

where no other form of relief can adequately provide redress. *Chene*y, 542 U.S. at 369. Refusing to comply with federal election laws, in defiance of Congress, constitutes an extraordinary circumstance.

### D. Petitioners' claims are not barred by the *Laches* defense because the Complaint demonstrated sufficient due diligence.

The Respondent assert the Petitioners' claim should be dismissed under the affirmative defense *Laches* for a lack of diligence in bringing the claim. The courts have made it clear that *Laches* may only be relevant "where the claim presented may be characterized as equitable, rather than legal. rather than legal. *White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990); *see Environmental Defense Fund, Inc. v. Alexander*, 614 F.2d 474, 478 (5th Cir.), cert. denied, 449 U.S. 919 (1980). Respondent first asserts that Petitioners were not diligent in bringing this suit. The Complaint detailed how the data used for the Petitioner claims was obtained, how that data was subsequently analyzed, and showed the voter discrepancies and errors. That data took time to be analyzed and due to the cyclical nature of elections the same issues if not resolved will occur in 2024 and all subsequent federal elections. The Respondent has compared this claim to a recently decided Maryland case, but the court did not rely on the *Laches* argument, rather the court footnoted if the standing argument succeeded the court would have turned to the *Laches* argument. *Md. Election Integrity, LLC. V. Md. State Bd. of Elections*, No. 24-672, 2024 U.S Dist. WL 2053773, at *11n.3. The State argues that if *Laches* is not granted in this case and Plaintiff prevails, the State "would be fundamentally forced to change the administration of elections". Motion to Dismiss, Doc 15 ¶14-15. The Respondent seems to suggest that if this Court finds that there are severe discrepancies in the voter registration index, it would be too cumbersome to fix those discrepancies, and the problem could never be corrected. This Court has the ability to check the process of the election in North Carolina to ensure proper election protocols are/were

followed. If there are issues in the election supervised by Respondent, where are petitioners to go but to this Court and seek a remedy in the short term, and help the Court craft a longer term remedy? Petitioners recognize the effort needed for Respondent to perform its duties at present, but asserts that it is a factual question whether or not the Court (and Respondent) could devise a remedy for 2024. Petitioners have suggested remedies available to present should the Court so desire.

## III. Conclusion

Based on the forgoing, Petitioner respectfully request that this court deny Respondent's Motion to Dismiss in the above-captioned matter.

Respectfully Submitted,

*/s/ Bruce L. Castor, Jr.*

Date: October 24, 2024

Bruce L. Castor, Jr.
Counsel for Petitioners

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.2(f)(3)**

Undersigned counsel certifies that this memorandum of law is in compliance with Local Rule 7.2(f)(3) in that this brief, including heading, footnotes, citations, and quotations, contains no more than 8,400 words as indicated by Word, the program used to prepare the brief.

Respectfully Submitted,

*/s/ Bruce L. Castor, Jr.*

Date: October 24, 2024

Bruce L. Castor, Jr.
Counsel for Petitioners

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2024, a copy of the foregoing Petitioners' Response in Opposition to Respondent's Motion to Dismiss was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties have access to this filing though the Court's system.

Respectfully Submitted,

*/s/ Bruce L. Castor, Jr.*

Date: October 24, 2024

Bruce L. Castor, Jr.
Counsel for Petitioners