UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-cv-500

| | |
|---|---|
| UNITED SOVEREIGN AMERICANS, INC.; and RICHARD YOST, <br><br> Petitioners, <br><br> v. <br><br> NORTH CAROLINA STATE BOARD OF ELECTIONS; JOSHUA STEIN, in his official capacity as Attorney General of North Carolina; and MERRICK GARLAND, in his official capacity as Attorney General of the United States, <br><br> Respondents. | **REPLY IN SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................II

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 1

    I.    Petitioners Have Not Demonstrated That This Court Has Jurisdiction Over The Petition.. 1

        A.    None of Petitioners' Arguments Overcome Sovereign Immunity. ............................... 1

        B.    The Petition Does Not Establish Standing. ................................................................... 3

    II.    The Petition Should Be Dismissed for Laches. .................................................................. 7

    III.    Petitioners Have Not Stated a Claim for Which Relief Can Be Granted. ........................... 8

CONCLUSION ............................................................................................................................. 9

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.2(F)(3) ....................................... 11

CERTIFICATE OF SERVICE ................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Ahmed v. Kable*, No. 21-3333, 2023 U.S. Dist. LEXIS 170718 (D.D.C. Sept. 25, 2023).............. 3

*Ariz. All. for Retired Ams. v. Mayes*, No. 22-16490, 2024 U.S. App. LEXIS 23963 (9th Cir. Sept. 20, 2024) ................................................................................................................................ 6

*Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275 (4th Cir. 2001) ............................................................ 2

*Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1998) .................................................................... 4

*Hafer v. Melo*, 502 U.S. 21 (1991) ................................................................................................ 2

*Idaho v. Coeur D'Alene Tribe*, 521 U.S. 261 (1997) .................................................................... 2

*In re Baldwin-United Corp.*, 770 F.2d 328 (2d Cir. 1985) ............................................................ 3

*Lane v. Holder*, 703 F.3d 668 (4th Cir. 2012) .............................................................................. 5

*Mass. v. EPA* .................................................................................................................................. 4

*People for the Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of W. Md., Inc.*, 843 F. App'x 493 (4th Cir. 2001) .............................................................................................. 5

**Statutes**

52 U.S.C. § 20507(a)(4) .................................................................................................................. 9

52 U.S.C. § 21081(a)(1)(A)(ii) ....................................................................................................... 9

52 U.S.C. § 21081(a)(5) .................................................................................................................. 9

# INTRODUCTION

Petitioners' lawsuit has multiple insurmountable problems, and their response does nothing to solve them.

First, Petitioners seem to acknowledge that Attorney General Stein is not a proper defendant and should be dismissed. Opp. 1 n.1. But Attorney General Stein is not the only party over whom this Court lacks jurisdiction. This Court also lacks subject-matter jurisdiction over the State Board because it has sovereign immunity. Finally, Petitioners have failed to show that their vote-dilution theory is concrete and specific enough to confer standing as to both State Defendants.

Nor are Petitioners entitled to mandamus relief. Because federal courts cannot issue writs of mandamus to state officials, as a threshold matter, Petitioners cannot obtain their relief here. That problem is only compounded by Petitioners' inability to articulate what the State Board is allegedly doing wrong. Mandamus relief requires a plaintiff to establish a clear duty on the part of the government actor and a clear entitlement to relief. Yet even now—after having filed a petition and a response brief—Petitioners still have not explained what the State Board is doing to violate federal law and what this Court should order to remedy any alleged violation. These omissions doom Petitioners' mandamus claim.

Petitioners' claims against Attorney General Stein and the State Board should be dismissed.

# ARGUMENT

## I. Petitioners Have Not Demonstrated That This Court Has Jurisdiction Over the Petition.

### A. None of Petitioners' Arguments Overcome Sovereign Immunity.

Petitioners seem to acknowledge that the principles of sovereign immunity generally apply to the State Board. Opp. 9-11. But they argue that the *Ex Parte Young* exception applies here. *Id.* at 10-11. They are mistaken.

First, the *Ex Parte Young* exception applies only to state *officers*, not state agencies. *Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275, 292 (4th Cir. 2001). The exception is premised on the notion that "when a State officer violates federal law, he is stripped of his official character, thus losing the 'cloak' of State immunity." *Id.* (quoting *Idaho v. Coeur D'Alene Tribe*, 521 U.S. 261, 288 (1997) (O'Connor, J., concurring in part and concurring in the judgment). State agencies, on the other hand, continue to enjoy traditional sovereign immunity from suit in federal court. *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

Here, Petitioners have not continued to assert claims against any state officers[1]—only the North Carolina State Board of Elections. And they do not dispute that the State Board of Elections is an arm of the State of North Carolina that falls within the purview of the Eleventh Amendment. Opp. 9-11; *see also* Br. 4-5. Because the State Board has sovereign immunity, the lawsuit should be dismissed.

Second, even if Petitioners had named the members of the State Board instead of the State Board itself, *Ex Parte Young* would not apply to this action. The *Ex Parte Young* exception allows only lawsuits against officers seeking prospective injunctive or declaratory relief. *Bragg*, 248 F.3d at 292. Here, of course, Petitioners have not sought injunctive or declaratory relief but, instead, a writ of mandamus. Petitioners insist that mandamus relief is the same thing as prospective injunctive relief. Opp. 10-11. But Petitioners' own allegations undermine that

---

[1] In response to State Defendants' explanation that Attorney General Stein plays no role in overseeing the conduct of federal elections (Br. 12), Petitioners seem to have conceded that he is not a proper defendant in this action. Opp. 1 n.1.
2
Case 5:24-cv-00500-M-BM    Document 31    Filed 11/07/24    Page 5 of 15

assertion. Petitioners concede that they have opted to seek mandamus relief specifically because "injunctive and/or declaratory relief is inapplicable or [in]appropriate in this matter." Pet. (D.E. 1) ¶ 193. If mandamus and injunctive relief were the same, mandamus would not be the sole—or even an alternative—way forward.

Separately, Petitioners fail to cite any case that holds that the *Ex Parte Young* exception applies to actions brought under the All Writs Act.[2] Opp. 10-11. Nor could they—federal courts have held that Congress did not abrogate the States' traditional sovereign immunity through the All Writs Act. *In re Baldwin-United Corp.*, 770 F.2d 328, 340 (2d Cir. 1985) ("The All-Writs Act . . . cannot be used to circumvent or supersede the constitutional limitations of the Eleventh Amendment."); *see also Ahmed v. Kable*, No. 21-3333, 2023 U.S. Dist. LEXIS 170718, at *25-26 (D.D.C. Sept. 25, 2023) (holding that neither 28 U.S.C. § 1361 nor § 1651 waives sovereign immunity); *see also* Br. 6.

This Court should dismiss this lawsuit with prejudice because the State Board has sovereign immunity from Petitioners' sole claim against the agency.

### B. The Petition Does Not Establish Standing.

Because Petitioners have failed to establish an injury or redressability, this Court should dismiss the Petition for lack of standing as well.

#### 1. Petitioners' allegations do not establish an injury.

Petitioners' brief confirms that their alleged injury is grounded in fears about potential vote dilution. Opp. 4-8. This alleged injury cannot satisfy the requirements for Article III standing. To begin, Petitioners' fear of vote dilution is entirely conjectural. As the State Board

---

[2] By focusing their arguments solely on the All Writs Act, Petitioners seem to agree with State Respondents that their claim under 28 U.S.C. § 1361, the Mandamus Act (Pet. ¶¶ 209-27), is not directed to the State Board.

explained in its opening brief, Petitioners offer no nonconjectural basis for believing that the 2024 election will be marred by voting irregularities or fraud. Br. 7-8. Indeed, Petitioners double down on the speculative nature of their injury by describing it only as a "reasonable . . . fear[] that the demonstrated and pled issues which occurred in the 2022 federal election in North Carolina will reoccur." Opp. 7. A bevy of courts have dismissed claims based on less speculative injuries. Br. 7-8.

Next, Petitioners argue that their injury is sufficiently particular even though it is widely shared by all qualified voters. Opp. 5 (citing *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 24 (1998); *Mass. v. EPA*, 549 U.S. 497, 517 (2007)). But neither of the cases they cite actually validates Petitioners' alleged injury. The Supreme Court's standing analysis in *Massachusetts v. EPA* turned on the "special solicitude" afforded to plaintiff-States in protecting their quasi-sovereign interests. 549 U.S. at 520. Petitioners, of course, can assert no such interests here.

In *Akins*, the Supreme Court held that a group of voters had suffered a cognizable injury when the FEC decided not to classify a particular organization as a political committee (which would have subjected it to certain disclosure requirements) because that decision shielded certain information from the voters that they alleged they were legally entitled to. 524 U.S. at 21. Though this informational injury was "widely shared," the Court held that it was not too generalized because the harm that the plaintiffs alleged was sufficiently "concrete." *Id.* at 24. Whereas "widely shared" injuries are often too "abstract" to satisfy Article III, the Court said, more "concrete" injuries—like an inability to access critical political information—can suffice. *Id.* at 23-25. Petitioners here, by contrast, allege the kind of "abstract and indefinite" injury that *Akins* resists. Though they fail to articulate a clear theory of harm, the injury that they allege seems to be a generic suspicion that the State Board has failed to enforce various voting laws

4

correctly, to the detriment of "all legally registered voters." Opp. 7. *Akins* says nothing to endorse that kind of vague, abstract harm.

Finally, Petitioners claim that their injury is sufficiently particular because they alone pursued this lawsuit (as opposed to "the whole community"). Opp. 7-8. But, of course, constitutional standing is not about who or how many people *pursue* a given claim, but rather who and how those people have been *injured* by the defendants' conduct. And the petition contains no allegations that Petitioners are injured in any way that distinguishes them from every other qualified voter. Petitioners' lawsuit should be dismissed.

### 2. United Sovereign Americans Cannot Establish Organizational or Associational Standing.

Petitioners' brief claims—without citing any support—that United Sovereign Americans has associational standing because Yost is a member, has performed some manner of investigation into alleged voting violations, and would have standing to sue in his own right. Opp. 7. But the petition itself never actually alleges that Yost is a member of United Sovereign Americans. Indeed, it is devoid of any allegations that the organization has any members at all. Br. 10. Petitioners cannot use their brief to fill gaps in their petition and avoid dismissal.

Separately, Petitioners' reliance on Yost's and United Sovereign Americans's alleged investigation and subsequent litigation to confer standing is also misplaced. Opp. 7. Petitioners cannot manufacture standing by expending resources on an investigation or litigation in response to the government's conduct. *Lane v. Holder*, 703 F.3d 668, 675 (4th Cir. 2012); *see also People for the Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of W. Md., Inc.*, 843 F. App'x 493, 497 (4th Cir. 2001) ("PETA did not allege or prove that its injury consisted of the costs associated with the instant lawsuit, but, rather, satisfied *Havens Realty* by alleging and proving that Defendants' actions impaired its ability to carry out its mission combined with a

5

consequent drain on its resources."). And that is precisely what Petitioners have done here—their claimed injury directly emanates from the purported investigation and analysis that underpin their allegations in their petition.[3]

Finally, United Sovereign Americans has not alleged facts sufficient to prove standing in its own right. Petitioners' brief argues that the "interests at stake relate to the heart of [United Sovereign Americans] as its mission is to ensure all Unite[d] States elections are fair, accurate, and trustworthy." Opp. 7. But, again, this is an allegation that shows up for the first time in Petitioners' briefing. Their petition itself is entirely bereft of allegations describing what the organization's mission is. Br. 10. Moreover, this one sentence does not describe what the organization's core activities are and how Respondents' actions have impacted them. *See, e.g.*, *Ariz. All. for Retired Ams. v. Mayes*, No. 22-16490, 2024 U.S. App. LEXIS 23963, at *25-26 (9th Cir. Sept. 20, 2024) (rejecting standing where complaint failed to state specific facts showing that defendant's actions frustrated the plaintiff organization's core activities); *see also* Br. 11.[4] Without at least that, Petitioners cannot establish standing.

### 3. Petitioners' injuries are not redressable.

Finally, Petitioners' arguments confirm that they have failed to satisfy the redressability requirement of Article III.

Neither Petitioners' petition nor their brief explains what steps they are asking the State Board to take to resolve their concerns. *See* Br. 13. Indeed, Petitioners underscore that they are not asking this Court for an order telling the State Board "*how* to perform its job. Petitioners

---

[3] This is also why Yost does not have standing to sue on his own either. The only injury Petitioners allege as to him specifically is through his role in this litigation.

[4] Even if the petition had stated the organization's core mission as ensuring that elections are fair, that would not be sufficient to maintain standing because it is too generic. *See supra* pp. 3-4.

seek court intervention to require Respondent simply to *do* its job and take whatever action Respondent considers appropriate in order to comply with Congressional mandates." Opp. 9. But therein lies the problem.

For its part, the State Board has faithfully followed federal and state law in conducting elections and it does not believe that any widespread error or fraud occurred in 2022. *See also* Br. 13. For that reason, to the extent that Petitioners ask the State Board to do its job and comply with the law, the State Board has already done so. A writ from this Court ordering compliance with the law would be wholly superfluous.

In their motion-to-dismiss briefing, Petitioners do also ask this Court to order the State Board to report "how it is possible that in 2022, various North Carolina county boards of elections could possibly have certified a federal election where more votes were counted than ballots cast?" Opp. 9. Setting aside that the State Board categorically denies this allegation, Petitioners' request appears nowhere in their petition. Petitioners cannot attempt to remedy the deficiencies with their amorphous mandamus claim as framed in their petition by introducing new requests for relief in their response brief.

## II. The Petition Should Be Dismissed for Laches.

Petitioners have unreasonably delayed in filing this petition. They do not dispute that their claim stems from voting patterns in the 2022 general election or that they waited until August 2024 to raise their claim. Opp. 14-15. This alone counsels in favor of dismissal.

They also mischaracterize the prejudice that the State Board will suffer if Petitioners are granted their relief. Petitioners say the State Board is arguing that fixing any alleged discrepancies "would be too cumbersome." Opp. 15. That is not right. Rather, the State Board has argued that Petitioners' belated demand that the agency fundamentally alter its election-administration practices, even while the election was already ongoing, will have unduly

7

prejudicial effects. In fact, given that voting in the 2024 General Election is now over, Petitioners effectively ask the State Board to retroactively impose ill-defined changes on an already-run election during the post-election certification period. Laches bars a late-breaking request of that kind, which would prejudice both the State Board and the voters of North Carolina.

### III. Petitioners Have Not Stated a Claim for Which Relief Can Be Granted.

Finally, Petitioners have failed to state a proper claim for mandamus.

For one thing, they have no response to State Respondents' arguments that Petitioners have alternative paths to relief under HAVA and the NVRA. Br. 18-19. Those alternative remedies, alone, are fatal to their mandamus claim.

For another, Petitioners have failed to allege that they have a clear right to their requested relief and that the State Board has a clear duty to provide their desired remedy.

*First*, as the State Board argued in its opening brief, relief under the All Writs Act is available only "in aid of" jurisdiction. Br. 17. Petitioners have not alleged or argued that they are invoking this provision as incidental to another claim over which the court has jurisdiction.

*Second*, federal courts cannot grant mandamus relief in response to federal claims against state officials. *See* Br. 16 (collecting cases). Petitioners seem to suggest that this rule does not apply because the State Board is a "quasi-federal agency subject to Congressional oversight." Opp. 11. But the cases Petitioners cite do not support this view. Rather, they all involve federal causes of action brought under other federal statutes, not under the All Writs Act. They therefore stand for nothing beyond the unremarkable proposition that a federal court can require state actors to comply with federal law when a plaintiff brings suit pursuant to a federal cause of action. Petitioners identify no case in which a federal court has recognized a right to secure a

8

Case 5:24-cv-00500-M-BM    Document 31    Filed 11/07/24    Page 11 of 15

writ of mandamus against state officers because they have somehow transformed into federal officers by complying with federal law.

*Third*, none of the provisions Petitioners rely on provides a clear right to their requested remedy. One provision requires the "error rate of [a] voting system in counting ballots" to comply with federal requirements. 52 U.S.C. § 21081(a)(5). Another requires that voting systems "shall . . . provide the voter with the opportunity . . . to change the ballot or correct any error." *Id.* § 21081(a)(1)(A)(ii). And finally, a third requires each State to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters" from the State's voter rolls. *Id.* § 20507(a)(4). But even accepting that these statutes impose certain obligations on the State Board, none of them purports to require the State Board to give Petitioners the precise relief they seek.

Nor have Petitioners alleged that the State Board has failed to take a required ministerial action. Petitioners insist that the State Board's actions do not comply with certain federal laws, but they do not allege *how* the State Board has failed to comply with its responsibilities under HAVA and the NVRA. By failing to show how the State Board is violating a ministerial requirement, Petitioners cannot establish that the State Board has a clear duty to provide Petitioners' requested relief.

## CONCLUSION

Because Petitioners seem to agree with the State Respondents that Attorney General Stein is not a proper defendant in this action, State Respondents respectfully ask this Court to dismiss him from this suit. In addition, for the foregoing reasons, the State Respondents ask this Court to dismiss the sole claim against the State Board with prejudice.

Respectfully submitted, this the 7th day of November, 2024.

Sarah G. Boyce

Deputy Attorney General and General Counsel
N.C. State Bar No. 56896
SBoyce@ncdoj.gov

/s/ Sripriya Narasimhan
Sripriya Narasimhan
Deputy General Counsel
N.C. State Bar No. 57032
SNarasimhan@ncdoj.gov

Mary Carla Babb
Special Deputy Attorney General
N.C. State Bar No. 25731
MCBabb@ncdoj.gov

Terence Steed
Special Deputy Attorney General
N.C. State Bar No. 52809
TSteed@ncdoj.gov

South A. Moore
Deputy General Counsel
N.C. State Bar No. 55175
SMoore@ncdoj.gov

North Carolina Department of Justice
P.O. Box 629
Raleigh, NC 27602
Phone: 919-716-6900
Fax: 919-716-6758

*Counsel for State Board Defendants*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.2(f)(3)

Undersigned counsel certifies that this memorandum of law complies with Local Rule 7.2(f)(3) in that the brief, including headings, footnotes, citations, and quotations, contains no more than 2,800 words as indicated by Word, the program used to prepare the brief.

This the 7th day of November, 2024.

/s/ Sripriya Narasimhan
Sripriya Narasimhan
Deputy General Counsel

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed electronically with the Clerk of Court using the CM/ECF system which will send notification of such filing to the below listed attorneys:

Bruce L. Castor, Jr.
Van der Venn, Hartshorn, Levin & Lindheim
1219 Spruce Street
Philadelphia, PA 19107
bcastor@mtvlaw.com
(215) 546-1000

Matthew P. Ceradini
Ceradini Law, PLLC
8480 Honeycutt Road, Suite 200
Raleigh, NC 27615
(919) 931-0702
m.ceradini@ceradinilaw.com

*Counsel for Petitioners*

This the 7th day of November, 2024.

/s/ Sripriya Narasimhan
Sripriya Narasimhan
Deputy General Counsel