| | |
|---|---|
| UNITED SOVEREIGN AMERICANS, INC. and RICHARD YOST, | ) ) ) |
| Petitioners, | ) ) |
| v. | ) ) ) |
| MERRICK GARLAND, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE UNITED STATES, et al., | ) ) ) ) |
| Respondents. | ) ) |

MEMORANDUM IN SUPPORT OF RESPONDENT MERRICK GARLAND'S MOTION TO DISMISS PETITIONERS' PETITION FOR RELIEF IN THE FORM OF A WRIT OF *MANDAMUS*

Pursuant to Federal Rules of Civil Procedure 12(b)(1), and (6), the Court should dismiss the claims against Merrick Garland, in his official capacity as Attorney General of the United States ("the Attorney General") in the Petition for Relief in the Form of a Writ of *Mandamus* ("Petition") [DE 1], which seeks a writ of mandamus to compel the Attorney General and North Carolina state actors, i.e., the North Carolina State Board of Elections, Josh Stein, in his official capacity as the Attorney General of North Carolina ("State Respondents") to enforce provisions of the National Voter Registration Act ("NVRA") and Help America Vote Act ("HAVA") brought by United Sovereign Americans, Inc., and Richard Yost ("United Sovereign Americans," "Yost," or collectively, "Petitioners"). The Court should dismiss the claims against the Attorney General as: (1) the Court lacks jurisdiction under Rule 12(b)(1) because Petitioners cannot establish constitutional standing to sue, (2) the Court lacks jurisdiction over Petitioners' mandamus claim because there is no clear duty directing

the Attorney General to act and Petitioners cannot establish they are entitled to extraordinary relief, and (3) Petitioners failed to state a plausible mandamus claim under the All Writs Act, 28 U.S.C. § 1651, or 28 U.S.C. § 1361 and therefore dismissal of the case is warranted under Rule 12(b)(6) because there is no mandamus jurisdiction. For these reasons, as argued below, the Court should dismiss Petitioners' claim against the Attorney General.

## INTRODUCTION

Broadly speaking, Petitioners in this purported voting rights case allege that North Carolina's 2022 federal election did not meet minimum reliability standards, as they define them, so the results should not have been certified. Using this premise as their baseline, they extrapolate that "[i]f the 2022 election performance is repeated in 2024, Petitioners and all North Carolina voters will suffer damages." Petition [DE 1] ¶ 2. They ask this Court to step in and take extraordinary action—to issue a writ of mandamus that orders the "relevant Respondents" to not certify North Carolina's 2024 federal election, *id*. at 49—so that Petitioners' allegations can be investigated and the 2024 election can proceed on Petitioners' terms.

Petitioners' claims against the Attorney General are flawed from all angles. First and foremost, this Court does not have jurisdiction to entertain Petitioners' claims. No Petitioner has Article III standing, as Petitioners assert only speculative injuries and generalized grievances that are not fairly traceable to the Attorney General or redressable by this Court. Petitioners' mandamus claim is also jurisdictionally deficient, as Petitioners cannot establish that the Attorney General

2

has a clear, nondiscretionary duty to act. Beyond these fatal jurisdictional issues, Petitioners' claims are not well-pleaded. The Attorney General seeks dismissal for lack of jurisdiction and failure to state a claim accordingly.

## BACKGROUND

United Sovereign Americans states it "is a nonprofit corporation incorporated in the state of Missouri." Petition [DE 1] ¶ 58. Yost's individual standing claim is that he is a North Carolina resident and since 2010 has voted in every general election. *Id.* ¶ 69.

Together as Petitioners, they allege that North Carolina's 2022 federal election had "hundreds of thousands of voter registration apparent errors" uncovered by United Sovereign Americans' "expert data analysists." Petition [DE 1] ¶¶ 148–49. These alleged errors concern voter registration information, such as addresses, names, registration status, and age, and votes counted. *Id.* at 48. Taking these purported identified errors, Petitioners computed error rates that they contend exceed the benchmark error rate applicable to "voting systems" under section 301 of the Help America Vote Act (HAVA) and the U.S. Election Assistance Commission's 2015 Voluntary Voting System Guidelines. *Id.* ¶¶ 15–20, 24–38. According to Petitioners, the error rates they calculated show that the 2022 election results are unreliable, and Respondents have not acted to prevent these errors from recurring. *Id.* ¶¶ 15, 33, 36–37, 45. Petitioners "believe and therefore aver" that these errors "will continue uncorrected . . . absent [judicial] intervention." Petition [DE 1] ¶ 21.

3

Based on all this, Petitioners ask the Court to issue a writ of mandamus under the All Writs Act and Mandamus Act that orders the Attorney General to "comply with" and "enforce and police" the NVRA and HAVA "for implementation in the North Carolina 2024 General Election and subsequent combined federal and state elections administered by State officials and [to] giv[e] Respondents a reasonable period of time in which to do so." *Id*. ¶ 214. As requested by Petitioner, the writ would order the Attorney General "to take steps . . . to ensure the apparent errors made during the 2022 elections do not recur" and bring down the error rates Petitioners computed. *Id*. ¶ 184. Although Petitioners maintain that they are not challenging or seeking to undo the 2022 election results, they make various requests related to that election, asking the Court to: (1) formally recognize that North Carolina's voter registration rolls had hundreds of thousands of apparent errors in the 2022 Election, (2) order Respondents to ministerially correct the apparent errors in the 2022 election, and (3) order Respondents to "ascertain to the Court's satisfaction the reasons why the 2022 errors occurred." *Id*. at 48–49. Petitioners also ask the Court to order the State to submit voter registration requests to the Department of Homeland Security to "verify citizen or immigration status . . . whenever there exist any reliable indicators that an applicant or registered voter may not be a U.S. citizen." *Id*. Then, citing "permissible causes of action under NVRA and HAVA," Petitioners ask the Court to order that "State of North Carolina may not certify the 2024 General Election unless and until the relevant Respondents have demonstrated to the Court that the 2024 General Election and subsequent elections were conducted in conformity with federal and

4

state law and with fewer than the maximum errors permissible." *Id*. Last, Petitioners ask the Court to order Respondents to perform their duties as "the law intended," including "investigating, and *where warranted in their discretion, prosecuting persons or entities for failing to perform their duties in conformity with the law after being given timely notice to do so.*" *Id*. (emphasis added).)

The Attorney General now moves to dismiss.

## LEGAL STANDARD

### A.     Fed. R. Civ. P. 12(b)(1).

"Federal courts are courts of limited jurisdiction," only possessing the power authorized by the Constitution and statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject-matter jurisdiction to adjudicate a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). Thus, a federal court must first determine whether it has subject matter jurisdiction before ruling on the merits of a case. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 479–80 (4th Cir. 2005). Under Rule 12(b)(1) once a challenge to a court's subject matter jurisdiction is made, a plaintiff bears the burden of proving that the court has subject matter jurisdiction. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

### B.     Fed. R. Civ. P. 12(b)(6).

Rule 12(b)(6) governs dismissal of a case for failure to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must

5

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under this standard, the complaint must do more than plead facts that are "'merely consistent with' a defendant's liability." *Id.* (quoting *Twombly*, 550 U.S. at 557). To avoid dismissal, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In evaluating a complaint, although a court must accept factual allegations as true, a complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" or asserts simply "an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). Additionally, a court may disregard a complaint's legal assertions—"[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). A complaint must state a plausible claim for relief, that is, a claim that permits the court to infer more than the mere possibility of misconduct based on the court's judicial experience and common sense. *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (quotation marks omitted). Although a reviewing court will take the facts in the light most favorable to the plaintiff, it need not accept the legal conclusions drawn from the facts, and [] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quotation marks and citations omitted). Further, if a complaint does not state enough plausible facts on its

face demonstrating a plaintiff's entitlement to relief, it is subject dismissal under Rule 12(b)(6). *Id.*

## ARGUMENT

**I.     Petitioners lack standing to sue the Attorney General.**

Petitioners fail to satisfy the most basic requirement for any suit to proceed in federal court—Article III standing to sue. Article III of the Constitution confines federal judicial power to "Cases" and "Controversies," which "can exist only if a plaintiff has standing to sue." *United States v. Texas*, 599 U.S. 670, 675 (2023). This "bedrock constitutional requirement" must be met before a court may reach the merits of a party's claim." *Id.* "By ensuring that a plaintiff has standing to sue, federal courts 'prevent the judicial process from being used to usurp the powers of the political branches.'" *Id.* at 676 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)).

Even if Petitioners' standing claims are considered individually, the claims fail. United Sovereign Americans' sole connection to the State of North Carolina and standing to sue appears to be Yost, its Information Technology Manager, who in describing his duties at United Sovereign Americans, states United Sovereign Americans is a "nationwide organization that concentrates on the analytics of state databases throughout the [United States]." Petition [DE 1] at 68 (Exhibit D); *see also id.* at 2 (referencing Yost's status as a North Carolina residence and voter). Relying on those facts, United Sovereign Americans alleges it is not required to show standing for itself. *Id.* ¶ 75 (citing *Horne v. Flores*, 557 U.S. 433, 445 (2009), for the proposition

7

that "the critical question is whether at least one petitioner has" claimed a personal stake in the outcome of a controversy that a federal court has invoked its jurisdiction). This argument fails because Yost's North Carolina residence and voter status, acting alone, does not grant Yost standing to sue and therefore prevents United Sovereign Americans from asserting standing based on Yost. *Buscemi v. Bell*, 964 F.3d 252, 260 (4th Cir. 2020) (holding a North Carolina resident and registered voter lacked standing because he asserted generalized allegations of harm that were too speculative to constitute an actual or imminent injury).

United Sovereign Americans also infers in a footnote at page five that it has standing based on the "mass violations of the NVRA due to widespread errors," that Congress intended groups of organized voters to bring private actions under an "organizational theory." Petition [DE 1] ¶ 100 n.5. To the extent it can be construed as asserting organizational standing, the argument fails because it has not alleged the Attorney General has impaired its ability as a "nationwide organization that concentrates on the analytics of state databases throughout the [United States]" to operate its core function, Petition [DE 1] at 68 (Exhibit D). *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, No. 24-2044, 2024 U.S. App. LEXIS 27415, at *6 (4th Cir. Oct. 29, 2024) (noting organizational standing may be found where an action appreciably harms an organization's ability to conduct its function and the challenged action causes a drain on the organization's resources).

Recently, in *Maryland Election Integrity, LLC v. Maryland State Board of Elections*, a court found United Sovereign Americans lacked standing to bring a

similar claim. *Maryland Election Integrity, LLC v. Maryland State Board of Elections*, Civil Case No: SAG-24-00672, 2024 U.S. Dist. LEXIS (D. Md. May 8, 2024). There, like here, United Sovereign Americans alleged an election board, there the Maryland State Board of Elections, violated certain provisions of the NVRA and HAVA. *Id.* at *3. United Sovereign Americans argued that they did not seek a "distinct form of relief." *Id.* The court stated its analysis could "begin and end… with [p]laintiffs' standing," *id.* at *5, as United Sovereign Americans did not establish standing as an organization or as a representative of their members because the remaining petitioner in the action also lacked standing. *Id.* at *3, *6–10.

The "irreducible constitutional minimum of standing contains three elements": injury in fact, causation, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561. As discussed below, Petitioners fail to meet their burden for each element.

### A.  Petitioners fail to establish injury in fact.

To start, Petitioners' allegations do not amount to injury in fact. An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (citations, quotation marks omitted). To be "concrete," the injury must be "real and not abstract," such that the plaintiff has "a personal stake in the outcome." *Spokeo Inc. v. Robins*, 578 U.S. 330, 339 (2016); *Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). To be "particularized," the injury "must affect the plaintiff in a personal and

9

individual way." *Spokeo*, 578 U.S. at 339; *see also Kenny v. Wilson,* 885 F.3d 280, 287 (4th Cir. 2018). And where no actual injury is alleged, the injury must be "certainly impending" to meet imminence. *Clapper*, 568 U.S. at 410. Injury in fact is not met where a plaintiff merely asserts a "generalized grievance" in which "the impact on [the] plaintiff is plainly undifferentiated and common to all members of the public." *Lujan*, 504 U.S. at 575 (cleaned up).

Petitioners' alleged injuries do not meet any of these requirements. Petitioners allege they "have been and are currently harmed by the State of North Carolina voting systems currently and formerly in use in the State of North Carolina state and federal elections" because the systems violate federal and state election laws, "the U.S. Constitution, and federal civil rights laws pertaining to voter registration rolls, transparency, compliance, and certification of the voting systems." Petition [DE 1] ¶ 73. Petitioners allege that Respondents "have allowed, and continue to allow," these alleged violations. *Id.* ¶ 72. This injury is not theirs alone, rather it is shared by "all North Carolina voters" and, they assert, "would cease to exist or be greatly relieved" by obtaining their requested relief. *Id.* ¶ 74.

All told, these allegations do not come close to constituting injury in fact. First, rather than being "concrete and particularized," Petitioners' injuries are textbook generalized grievances. *See Lujan*, 504 U.S. at 573–74 ("We have consistently held that a plaintiff raising only a generally available grievance about government— claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits

him than it does the public at large—does not state an Article III case or controversy."). Petitioners do not allege that anything real or personal is at stake for them if the 2024 election proceeded, as it did, without their interruption. *Clapper*, 568 U.S. at 411. All Plaintiffs say is that they were and will be "harmed" by North Carolina's "voting systems" because the systems "violate" laws. Petition [DE 1] ¶ 72. But "an injury amounting only to the alleged violation of a right to have the Government act in accordance with law [is] not judicially cognizable." *See Lujan*, 504 U.S. at 575. And despite the thousands of registration issues purportedly "uncovered" by United Sovereign Americans, tellingly, Yost, a North Carolina resident and voter since 2010, does not allege that these issues impacted his ability to cast a vote in past elections or to register for the 2024 election. *See Gill v. Whitford,* 585 U.S. 48, 65–66 2018) (rejecting voter challenges to statewide districts drawn throughout Wisconsin and holding that for purposes of standing in election law cases, plaintiffs must show individual and personal injury); *see also Gibson v. Frederick Cnty.*, Civil Case No.:SAG-22-1642, 2022 U.S. Dist. LEXIS 227125, at * 13–14 (D. Md. Dec. 16, 2022) (finding plaintiffs did not have standing in election law case involving various constitutional claims because they did not show that they were disadvantaged as individuals). As it stands, Petitioners' injuries do not meet the "concrete and particularized" requirements of injury in fact.

Second, Petitioners cannot show their alleged harm is "actual or imminent," as opposed to "conjectural or hypothetical." *Lujan*, 504 U.S. at 561 (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). As alleged, Petitioners "believe and therefore

aver" that the 2024 election will violate various laws, but Petitioners do not base their beliefs in anything tangible, and "[a]llegations of possible future injury do not satisfy the requirements of Article III." *Whitmore*, 495 U.S. at 158. Petitioners' allegations rested on "speculative fear," *Clapper*, 568 U.S. at 410, that registration issues would occur and somehow lead to unreliable election results. This "highly attenuated chain of possibilities [] does not satisfy the requirement that threatened injury must be certainly impending," and because Petitioners do not offer anything more, their allegations do not meet imminence. *See id.*

At bottom, Plaintiffs' fears about the 2024 election amount to mere guesswork, not injury in fact. *See, e.g., Republican Nat'l Comm. v. Benson*, No. 24-262, --- F. Supp. 3d ---, 2024 WL 4539309, at *9 (W.D. Mich. Oct. 22, 2024) (holding plaintiffs' fears of unlawful voting, as "psychic injury," do not amount to injury in fact (quoting *Glennborough Homeowners Ass'n v. U.S. Postal Serv.*, 21 F. 4th 410, 415 (6th Cir. 2015))). Petitioners lack standing accordingly.

### B. Petitioners do not meet causation or redressability.

Beyond failing to allege injury in fact, Petitioners cannot establish the remaining elements of standing: causation and redressability. For causation, the injury alleged "has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party before the court." *Lujan*, 504 U.S. at 560 (cleaned up). For redressability, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* "Thus, when the plaintiff is not himself the object of the government action or inaction

12

he challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish. *Id.* at 562.

Here, Petitioners' alleged injuries from the Attorney General are that the Attorney General has failed to generally exercise his power to enforce the NVRA and HAVA, laws promoting registration and improvement of the election system to Petitioners' satisfaction. Petition [DE 1] ¶¶ 211–14. But Petitioners do not allege that their alleged injuries—fears that the 2024 election results will be unreliable—can be traced to the Attorney General in any specific way. No Department of Justice enforcement guidelines, policies, or directives are mentioned in the Petition, nor do Petitioners provide examples of supposed actions that the Attorney General has taken or mandatory duties that the Attorney General has failed to fulfill with respect to state election processes Without such allegations—or anything like them—Petitioners' alleged injury is not "fairly traceable" to the Attorney General.

Plaintiffs also cannot establish that their injuries are redressable by this Court. The relief they seek against the Attorney General is a mandamus order that Respondents "perform [] duties as the law intended," to include "investigating, and where warranted in [his] discretion, prosecuting persons or entities." Petition [DE 1] at 49. As an initial matter, it is unclear how such an order "would remedy respondents' alleged injury," as Petitioners have not alleged that they have suffered any specific injury based on the Attorney General's supposed inaction. *See Lujan*, 504 U.S. at 569. It is well-established that "federal courts are generally not the proper forum for resolving claims that the Executive Branch should make more arrests or

13

bring more prosecutions." *Texas*, 599 U.S. at 680. Indeed, Article II provides the Executive Branch discretionary authority to decide "how to prioritize and how aggressively to pursue legal actions," and "courts generally lack meaningful standards for assessing the propriety of enforcement choices in this area." *Id.* at 679. Because Petitioners cannot establish that their requested relief remedies their alleged injuries, or can even be granted by this Court, they lack redressability.

Petitioners cannot meet their burden of establishing standing to sue the Attorney General. The Court should dismiss their complaint for lack of jurisdiction accordingly.

## II. The Court lacks jurisdiction over Petitioners' mandamus claim.

Likewise, Petitioners' mandamus claim fails for lack of jurisdiction. The Mandamus Act confers jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "If the complaint states nonfrivolous allegations of the existence of the essential elements supporting a mandamus action, jurisdiction is established and a trial court must determine a remedy vel non on the merits." *In re First Fed. Sav. & Loan Ass'n of Durham*, 860 F.2d 135, 140 (4th Cir. 1988).

Mandamus is a "drastic" remedy, "to be invoked only in extraordinary situations." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980). A petitioner seeking a writ of mandamus under 28 U.S.C. § 1361 must demonstrate: (1) a clear and indisputable right to the relief, (2) that the responding party has a clear duty to

14

do the specific act, (3) the act requested is an official act or duty, (4) the petitioner has no other adequate means to attain the relief, and (5) the issuance of the writ will effect right and justice in the circumstances. *U.S. ex rel. Rahman v. Oncology Assocs., P.C.*, 198 F.3d 502, 511 (4th Cir. 1999) (quotation marks omitted).

Petitioners fail to meet this high bar for mandamus relief because they have not established the Attorney General had a clear duty to "enforce and police" the NVRA and HAVA "for implementation in the North Carolina 2024 General Election," *see* Petition [DE 1] ¶ 214, within the meaning of § 1361 as specified by Petitioners. *Oncology Assocs., P.C.*, 198 F.3d at 511.

As such, the duty Petitioners allege is that the Attorney General police and enforce the NVRA and HAVA in North Carolina by "investigating, and where warranted in their discretion, prosecuting persons or entities for failing to perform their duties in conformity to the law after being given timely notice to do so." Petition [DE 1] at 49. Petitioners' allegations, therefore, concede that they ask this Court to enforce a discretionary duty, for which there is no mandamus remedy. *Oncology Assocs., P.C.*, 198 F.3d at 511. Indeed, as explained above, investigating and prosecuting are quintessential discretionary decisions. *See Texas*, 599 U.S. at 680. Accordingly, "[t]he party seeking a writ of mandamus must satisfy the conditions of a rigorous test, demonstrating each and every one of the [*Oncology Assocs., P.C.*, 198 F.3d at 511] requirements" are met. *In re Braxton*, 258 F.3d 250, 261 (4th Cir. 2001). A district court in the Fourth Circuit faced a similar situation during the COVID-19 pandemic. In *Kennedy v. Wilkinson*, Civil Action No. ELH-21-1569, 2021 U.S. Dist.

LEXIS 120050 (D. Md. June 28, 2021), the plaintiff, a Maryland resident and voter, filed a complaint seeking a writ of mandamus under 28 U.S.C. § 1361 to compel an acting Assistant Attorney General to enforce the NVRA and HAVA by issuing rules requiring voters to present two forms of specified identification. *Id.* at * 2. The court rejected that "the Attorney General is obligated to promulgate the rules and penalties" the plaintiff had suggested. *Id.* at *5–6; see also Garcia v. United States Att'y Gen.*, No. 8:23-CV-3501-JFA-JDA, 2023 WL 6619424 (D.S.C. Oct. 11, 2023) (overruling prisoner objection to magistrate recommendation and denying writ of mandamus under 28 U.S.C. § 1361 seeking to compel United States Attorney General to apply earned time credits to prisoner's sentence and to provide expedited removal from the United States because the United States Attorney General had no clear duty to provide the specific act under the First Step Act or Immigration and Nationality Act), *appeal dismissed*, No. 23-7112, 2024 WL 1926204 (4th Cir. Feb. 23, 2024). Petitioners thus cannot establish that the Attorney General owed them a clear nondiscretionary duty, so their mandamus claim fails.

Nor can Petitioners establish a clear right to relief, specifically for their allegations that HAVA has been violated. Petitioners allege violations of HAVA based on the error rate computed by United Sovereign Americans' "expert analysists" that Petitioners claim exceeds HAVA's acceptable error rate. Petition [DE 1] ¶¶ 24–38. Yet, HAVA's error rate pertains to "Voting Systems Standards," which refers to the "error rate of [a] voting system in counting ballots," *id.* ¶ 115 (*see also* 52 U.S.C. § 21081(a)(5) (discussing the "error rate of the voting system in counting ballots" while

excluding errors "attributable to an act of the voter"), not the registration issues Petitioners' Petitions identifies, *id.* ¶¶ 39–42. The factual errors that Petitioners allege are thus inapposite to the HAVA violations alleged, so Petitioners cannot establish a "clear right to relief" under HAVA. Plaintiffs' mandamus claim should be dismissed for this reason, too.

### III. Petitioners' All Writs Act claim must be dismissed.

Last, to the extent Petitioners bring their All Writs Act claim against the Attorney General, it must be dismissed. The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. The Act enables federal courts to issue such commands "as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *United States v. N.Y. Tel.,* 434 U.S. 159, 172 (1977). It does not authorize courts "to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate." *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985). "Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Id.*

Petitioners" All Writs Act claim mirrors their mandamus claim against the Attorney General. *See* Petition [DE 1] ¶¶ 209–27 (incorporating previous paragraphs, including paragraphs seeking All Writs Act relief and seeking a writ of mandamus to

17

compel the Attorney General under 28 U.S.C. § 1361); *see also* Petition [DE 1] at 2 n.1 (stating "Petitioners herein are seeking relief via the All Writs Act ([sic] § 1361) and an Action to Compel a United States Officer to Perform His/Her Duty (§ 1361). Petitioners seek the same writ of mandamus under both statutes—one compelling the Attorney General to enforce and police the NVRA and HAVA. (Petition [DE 1] ¶ 214. But the All Writs Act does not provide an independent source of jurisdiction, so Petitioners are not separately entitled to mandamus relief under it. *See Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 33 (2002) (noting "the All Writs Act does not confer jurisdiction under federal courts" so jurisdiction does not lie unless "specifically provide[d]" by Congress). As discussed above, Petitioners cannot establish their mandamus claim under 28 U.S.C. § 1361 because they do not allege a clear, nondiscretionary duty to act. Without jurisdiction under the Mandamus Act, their All Writs Act claim necessarily fails, too, as Petitioners do not assert any other claims in their petition and, in fact, expressly disclaim other statutory authority for their claims. *See* Petition [DE 1] ¶ 221 (alleging Petitioners have no remedy other than mandamus so that Respondents will enforce HAVA and NVRA but they are not bringing a "private cause of action" under those statutes). The Court should therefore dismiss Petitioners' All Writs Act claim against the Attorney General.

## CONCLUSION

WHEREFORE, for the above-stated reasons, the Court should dismiss Petitioners' Petition.

Respectfully submitted this 15th day of November 2024.

        MICHAEL F. EASLEY, JR.
        United States Attorney

        By: /s/ *Michael G. James*
        MICHAEL G. JAMES
        Assistant United States Attorney
        U. S. Attorney's Office Civil Division
        150 Fayetteville Street, Suite 2100
        Raleigh, NC 27601
        Telephone: (919) 856-4530
        E-mail: mike.james@usdoj.gov
        N.Y. Reg. No. 2481414

## CERTIFICATE OF SERVICE

This is to certify that undersigned counsel has on this 15th day of November 2024, served a copy of the foregoing Memorandum in Support of the Motion to Dismiss upon Petitioners' counsel of record by filing the same via the District Court's CM/ECF Document Filing System or placing a copy in the U.S. Mail addressed to the following:

Van der Veen, Ilartshorn, Levin, & Lindheim
By: /s/ Bruce L. Castor. Jr.
Bruce L. Castor, Jr.
PA I.D. No. 46370
Pro Hac hce
1219 Spruce Street
Philadelphia, PA 19107
Main: (215) 546-1000
Fax: (215) 546-8529
Email: bcastor@mtvlaw.com

By: /s/ Matthew P. Ceradini
Matthew P. Ceradini
NC Bar No: 45921
Ceradini Law, PLLC
8480 Honeycutt Rd., Ste. 200, Raleigh, NC 27615
Phone: 919-931-0702/ Fax: 919-825-1805
m.ceradini@ceradinilaw. com
Local Civil Rule 83.1(d) Attorney


MICHAEL F. EASLEY, JR.
United States Attorney

By: /s/ Michael G. James
MICHAEL G. JAMES
Assistant United States Attorney
U. S. Attorney's Office Civil Division
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Telephone: (919) 856-4530
E-mail: mike.james@usdoj.gov
N.Y. Reg. No. 2481414