UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:24-cv-00500-M-BM

| | |
|---|---|
| UNITED SOVEREIGN AMERICANS, INC. and RICHARD YOST, | )<br>)<br>) |
| Petitioners, | ) REPLY IN SUPPORT OF<br>) MERRICK GARLAND'S |
| v. | ) MOTION TO DISMISS<br>) |
| MERRICK GARLAND, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE UNITED STATES, et al., | )<br>)<br>)<br>) |
| Respondents. | ) |

Respondent Merrick Garland (the "Attorney General"), in his official capacity as the Attorney General of the United States, through the United States Attorney's Office for the Eastern District of North Carolina, submits this reply to Petitioners' response [D.E. 25] to the Attorney General's motion to dismiss [D.E. 32].

## **INTRODUCTION**

Petitioners' response confirms that dismissal of their claims against the Attorney General is warranted. Petitioners are not able to overcome the jurisdictional and pleading deficiencies identified in the Attorney General's prior memorandum of law [D.E. 33].

Additionally, since the filing of the motion to dismiss, at least one other United States District Court has dismissed nearly identical claims for relief brought by Petitioner United Sovereign Americans, Inc. against the Attorney General. *See United Sovereign Americans v. Byrd*, 4:24-cv-327, D.E. 33 (N.D. Fla. Dec. 20, 2024).

A notice of supplemental authority with a copy of that ruling is being filed contemporaneously herewith.

For these reasons and the reasons set forth in the Attorney's General's prior memorandum of law, the Court should dismiss Petitioners' claims against the Attorney General.

## REPLY

### I. Petitioners Lack Standing to Sue the Attorney General.

First, Petitioners do not meet their burden to establish Article III standing for their claims against the Attorney General. As Petitioners acknowledge, Article III standing has three elements: (1) injury in fact, (2) causation, and (3) redressability. D.E. 36 at 2–3. Petitioners assert that they can establish standing because (i) Petitioner Yost is "an individual qualified to vote in North Carolina whose vote was diluted" in the 2022 federal election by alleged errors with voting registration and voting systems; (ii) Petitioner Yost, with the help of Petitioner United Sovereign Americans, Inc., "requested and gathered documentation regarding the statewide voter registration database and uncovered numerous registration and voting violations," and "comb[ed] through innumerable pages of hard voter data to ascertain the accuracy of voter registration rolls," and "create[d] a comprehensive report on apparent registration and voting violations," that occurred in the 2022 federal election; (iii) the "the interests at stake relate to the heart of [United Sovereign Americans, Inc.] as its mission is to ensure all Unite[d] States elections are fair, accurate, and trustworthy; the very heart of their claim"; and (iv) "the claim set forth

in this matter" is "for the benefit of all legally registered voters, protecting their votes against the dilution that occurred in 2022, and prevent further voter inaccuracies in further federal elections regulated by the State of North Carolina." D.E. 36 at 5–7. None of these allegations are sufficient to state a concrete and particularized injury in fact.

As explained in the Attorney General's prior memorandum of law, Petitioners' assertions regarding the alleged "dilution" of votes and the Attorney General's alleged failure to ensure that North Carolina's voting systems and voter registration records meet federal standards are textbook generalized grievances. *See* D.E. 33 at 7–12. "[A]n injury amounting only to the alleged violation of a right to have the Government act in accordance with law [is] not judicially cognizable." *Lujan v. Defs. of Wildlife*, 504 U.S. 573–74 (1992). Petitioners "do not seek relief in this Court in a challenge to the outcome of the 2022 federal election in North Carolina," D.E. 1 at ¶ 19, and their alleged fear that government inaction will lead to inaccuracies in future federal elections is nothing more than "speculative fear" of future injury, without any tangible connection to the Attorney General. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013).

Moreover, contrary to their assertion that they have standing because they combed through voting records and created reports, D.E. 36 at 5–6, Petitioners cannot manufacture an injury in fact by spending time or money identifying alleged irregularities with the voting system that would otherwise constitute generalized or speculative grievances. *See Clapper*, 568 U.S. 398, 410 ("[R]espondents cannot

3

manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."); *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024) ("But an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action."). Nor does United Sovereign Americans, Inc. have standing based on its purported mission of ensuing accurate elections where it has suffered no injury in fact. *See id.* ("Like an individual, an organization may not establish standing simply based on the intensity of the litigant's interest or because of strong opposition to the government's conduct, no matter how longstanding the interest and no matter how qualified the organization.") (internal quotations and citations omitted).

The authority cited in Petitioners' response is inapposite given Petitioners' alleged harms. None of the cited cases provide that a plaintiff meets Article III standing to sue the Attorney General (or similar defendant) based on a fear that future election results will be inaccurate. Petitioners rely first on *Massachusetts v. EPA*, 549 U.S. 497 (2007), a case that did not concern voting rights and is inapposite for multiple reasons. In that case, the Court's analysis turned "on the proper construction of a congressional statute," under which Congress had authorized certain challenges to the type of EPA action or inaction at issue. The Court explained that Congress's authorization is of critical importance to the standing inquiry: "Congress has the power to define injuries and articulate chains of causation that will

4

give rise to a case or controversy where none existed before." *Id.* at 516 (citing *Lujan*, 504 U.S., at 580 (Kennedy, J., concurring in part and concurring in judgment)). Here, Plaintiffs do not cite any equivalent Congressional authorization for its suit against the Attorney General. The Court in *Massachusetts v. EPA* also placed special reliance on the fact that the plaintiff was a sovereign state, not a private individual or organization, so entitled to "special solicitude in the standing analysis." *Id.* at 520. None of these factors are present here.

Petitioners' other cited Supreme Court cases also do not provide support for a claim against the Attorney General. *Gray v. Sanders*, 371 U.S. 368 (1964) concerned a constitutional challenge against Georgia election officials over vote counting and a weighted voted system. *Id.* at 375. While the Court found that the plaintiff had standing to sue the Georgia election officials, there was no federal defendant in the case, and there was no allegation that any federal official had caused any injury by failing to ensure Georgia's compliance with federal law. *See id.*

In *Federal Election Comm'n v. Akins*, 524 U.S. 11, 21 (1998), a group of voters sought review of a decision by the Federal Election Commission ("FEC") and brought suit under the Federal Election Campaign Act ("FECA"), which specifically authorized a private action. In finding prudential standing, the Court relied on FECA's language authorizing suit against the FECA by "aggrieved" parties. *Id.* at 19–20. Here, again, Petitioners do not cite any equivalent Congressional authorization of a suit against the Attorney General. Notably, the injury in fact analysis in *Akins* also turned on the allegation that the FEC's decision deprived

5

plaintiffs of their ability to obtain information that was otherwise required by statute to be publicly disclosed. *Id.* at 21. Petitioners cite no analogous statutory requirements for the Attorney General.

In *Baker v. Carr*, 369 U.S. 186, 208 (1962), the petitioners were voters who challenged Tennessee's apportionment statute on the basis that the statute resulted in "a gross disproportion of representation to [the] voting population" based on counties of residence. Given these allegations of a concrete harm and not mere speculation, the Court found that petitioners had standing because they asserted a "plain, direct, and adequate interest in maintaining the effectiveness of their votes," not just a claim that "the government be administered according to law." *Id.* The alleged harms in the present case are a far cry from those asserted in *Baker v. Carr*, and again there was no federal defendant in that case who had been alleged to have caused any injury. In sum, none of the cited cases support Petitioners' attempts to establish standing against the Attorney General.

Finally, Petitioners do not respond to the Attorney General's arguments regarding causation and redressability. *See* D.E. 33 at 12–14. Petitioners thus waive opposition to dismissal on these grounds. Even if they did not waive these issues, Petitioners' complaint does not satisfy either element, as their alleged harms do not relate to action (or inaction) by the Attorney General. Nor does this Court have authority to order the Attorney General to perform discretionary duties. *See* D.E. 33 at 15–16. Because Petitioners cannot establish standing, their claims against the Attorney General should be dismissed for lack of jurisdiction.

6

Case 5:24-cv-00500-M-BM    Document 41    Filed 01/15/25    Page 6 of 9

## II. Petitioners' Mandamus Claim Must Be Dismissed for Lack of Jurisdiction.

Petitioners' mandamus claims also fail for lack of jurisdiction. Petitioners attempt to assert a mandamus claim based on the notion that the Attorney General has a duty to enforce and prosecute federal election laws. D.E. 36 at 9. However, as the Attorney General's opening brief makes clear, there is no mandamus remedy available where a petitioner asks the Court enforce a discretionary duty. D.E. 33 at 15–16. Because Petitioners do not identify a clear non-discretionary duty to act, their mandamus claim fails.

## III. Petitioners' Cannot Pursue Their Claims under the All Writs Act.

Finally, Petitioners concede that they have invoked the All Writs Act as a last resort because no other statute provides them a cause of action against the Attorney General. D.E. 36 at 12–13. This concession defeats their claim because the All Writs Act, alone, cannot sustain Petitioners' claims against the Attorney General. "[T]he All Writs Act does not confer jurisdiction on the federal courts[.]" *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 33 (2002); *see also* D.E. 36 at 17–18. Nor can Petitioners use the All Writs Act to create their own cause of action. *See id.* The All Writs Act provides no basis for Petitioners to sue the Attorney General and compel discretionary action to be taken. Petitioners' claims under the All Writs Act must be dismissed accordingly.

## CONCLUSION

For the above-stated reasons and those stated in the Attorney General's prior memorandum of law, the Court should dismiss Petitioners' Petition.

Respectfully submitted this 15th day of January 2025.

    MICHAEL F. EASLEY, JR.
    United States Attorney

    By: /s/ *Michael G. James*
    MICHAEL G. JAMES
    Assistant United States Attorney
    U.S. Attorney's Office Civil Division
    150 Fayetteville Street, Suite 2100
    Raleigh, NC 27601
    Telephone: (919) 856-4530
    E-mail: mike.james@usdoj.gov
    N.Y. Reg. No. 2481414

    BENJAMIN J. HIGGINS
    Assistant United States Attorney
    U.S. Attorney's Office Civil Division
    150 Fayetteville Street, Suite 2100
    Raleigh, North Carolina 27601
    Telephone: (919) 856-4043
    Email: benjamin.higgins2@usdoj.gov
    Massachusetts Bar # 690969

# CERTIFICATE OF SERVICE

This is to certify that undersigned counsel has on this 15th day of January 2025, served a copy of the foregoing upon Petitioners' counsel of record by filing the same via the District Court's CM/ECF Document Filing System or placing a copy in the U.S. Mail addressed to the following:

Van der Veen, Ilartshorn, Levin, & Lindheim
By: /s/ Bruce L. Castor. Jr.
Bruce L. Castor, Jr.
PA I.D. No. 46370
Pro Hac hce
1219 Spruce Street
Philadelphia, PA 19107
Main: (215) 546-1000
Fax: (215) 546-8529
Email: bcastor@mtvlaw.com

By: /s/ Matthew P. Ceradini
Matthew P. Ceradini
NC Bar No: 45921
Ceradini Law, PLLC
8480 Honeycutt Rd., Ste. 200, Raleigh, NC 27615
Phone: 919-931-0702/ Fax: 919-825-1805
m.ceradini@ceradinilaw. com
Local Civil Rule 83.1(d) Attorney

MICHAEL F. EASLEY, JR.
United States Attorney

By: /s/ Michael G. James
MICHAEL G. JAMES
Assistant United States Attorney
U. S. Attorney's Office Civil Division
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Telephone: (919) 856-4530
E-mail: mike.james@usdoj.gov
N.Y. Reg. No. 2481414